**JEWELERS' SAFETY FUND SOC. v. LOWE, Collector of Internal Revenue.**

**SAME v. ANDERSON, Collector of Internal Revenue.**

(Circuit Court of Appeals, Second Circuit. May 18, 1921.)

Nos. 197, 198.

Internal revenue $\Leftarrow$7, 9—Computation of "net income" of mutual insurance society; "insurance company."

Jewelers' Safety Fund Society, incorporated by special act, without capital stock, for mutual protection of its members against loss from fire, burglary, etc., with power only to levy assessments after a loss occurs, but whose members for convenience deposit with the society a sum estimated as sufficient to cover expenses and losses during the year, which deposits, however, belong to the depositors until used to pay losses, *held* an "insurance company," subject to tax under Excise Tax Act Aug. 5, 1909, § 38, and Income Tax Act Oct. 3, 1913, § 2G (a), (b), on its "net income," which is the excess, if any, of the sum drawn by it from the deposit fund over losses and expenses of operation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Net Income; Insurance Company.]

In Error to the District Court of the United States for the Southern District of New York.

Actions by the Jewelers' Safety Fund Society against John Z. Lowe, Jr., Collector of Internal Revenue, and against Charles W. Anderson, Collector, etc. Judgments for defendants, and plaintiff brings error. Reversed.

Putney, Twombly & Putney, of New York City (Lemuel Skidmore, Jr., of New York City, of counsel), for plaintiff in error.

Francis G. Caffey, U. S. Atty., of New York City (Richard S. Holmes, Sp. Asst. U. S. Atty., of New York City, and Newton K. Fox, Sp. Atty. Bureau of Internal Revenue, of Washington, D. C., of counsel), for defendants in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

$\Leftarrow$For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARD, Circuit Judge.   These are actions by the Jewelers' Society to recover taxes upon income for the years 1912, 1913, 1914, and 1915, paid to the Collector of Internal Revenue under protest, under section 38 of the Act of August 5, 1909, 36 Stat. 11, imposing an excise tax on the privilege of doing business, and under section 2G (b) of the Act of October 3, 1913, 38 Stat. 114, enacted in pursuance of the Sixteenth Amendment of the Constitution adopted in that year.

The defendant demurred in each case on the ground that the complaint did not state facts sufficient to constitute a cause of action.   The District Judge treated the cases as if they both arose under the act of 1913, and dismissed the complaints on the merits, with costs to the defendant, from which judgments the plaintiff appeals.

The court rightly held that the plaintiff is an insurance company not falling within the classes exempted in each act, and therefore subject to taxation on its net income under both acts; but he further held the plaintiff to be a fire insurance company, and therefore taxable upon its net income, under section 2G (a), which reads:

"That the normal tax hereinbefore imposed upon individuals likewise shall be levied, assessed, and paid annually upon the entire net income arising or accruing from all sources during the preceding calendar year to every corporation, joint stock company or association, and every insurance company, organized in the United States, no matter how created or organized, not including partnerships. * * *"

The plaintiff has no capital stock, maintains no office, and makes no profits, being a mutual company of the purest kind.   The obligation of its members in respect to payments is fixed by section 8 of its charter, which reads:

"The said corporation shall have power to levy assessments for the payment of losses arising under its policies of insurance, such assessments in every case to be made upon all holders of policies of said corporation at the time when the loss for which the assessment is levied occurred, including the holder of the policy under which the loss occurs, and upon no others.   Each policy holder liable to assessment as aforesaid shall be assessed in a sum bearing the same proportion to the total amount assessed as the amount of insurance held by such policy holder at the time the loss occurred bears to the total amount of insurance by said corporation in force at that time.   In case of the death or dissolution of any policy holder after a loss shall have occurred, such assessment shall be levied upon the personal or legal representatives or successors of such policy holder, to be paid out of the estate or assets of such policy holder in due course of administration or liquidation. The mode of levying such assessment, and notifying the policy holders thereof, shall be prescribed by the by-laws, and the sum assessed upon each policy holder shall become due and payable to said corporation at the expiration of 60 days from the service of such notice."

It is noticeable that this provision speaks only of an assessment for payment of losses, but it must be understood as including a loading to meet the operating expenses of the company; otherwise, the business could not be carried on.   The question which both parties wish to be determined is as to the proper method of ascertaining the net income of the plaintiff under both of these statutes, whose provisions in respect to such a corporation are the same.

That the plaintiff is not an insurance company under the laws of the state of New York is perfectly plain. It was incorporated by a special statute (Chapter 171, Laws 1884), at which time and for a long time previous the state of New York had enacted general statutes to cover various corporations. Chapter 308, Laws 1849, provides for the incorporation among others of companies insuring against fire. Thereafter by chapter 463 and chapter 466, Laws 1853, and chapter 175, Laws 1883, general laws were passed for the incorporation of companies for various other objects. If, as the defendant contends, the character of the plaintiff corporation is not to be determined by the laws of the state of New York, but under the federal statutes, then this plaintiff is as much a corporation for insurance against burglary as it is a fire insurance company. We think it is plainly a corporation for the protection of a certain specific class of the community, to wit, manufacturers of, importers of, and dealers in jewelry, etc. Section 2 of the charter provides:

"The corporation hereby created shall have power to insure manufacturers or importers of, and wholesale or retail dealers in watches, watch movements, jewelry, diamonds, precious stones, plate, ornaments and similar goods, against loss or damage to any such merchandise, goods, or articles owned by such manufacturers, importers or dealers, or held by them in trust or on commission, or sold but not delivered, or in which they have any interest or for which they are in any respect liable, by any and all risks of fire, theft, barratry and embezzlement, and any and all risks of transportation by land or water, during all or any period or periods of time whilst such merchandise, goods or articles are outside of the stores, offices and manufacturies of the assured, whether the same are in custody of the assured, their clerks, salesmen, agents or servants, or of any express or transportation line, or in letters or packages in the mail, or in the custody of any other persons or corporations, to whom they may have been intrusted or delivered by or on behalf of the assured, their clerks, salesmen, agents or servants."

Therefore the question is: How is the plaintiff taxable under those two laws? The members are not liable to assessment until after each loss has occurred, and are not liable to pay until after 60 days' notice of the assessment. For their own convenience, however, they deposit with the company an amount estimated by it to cover expenses and losses incurred during the year, which deposits it invests or carries in bank, and so earns interest. This interest belongs, not to the company, but to the depositors. The company has no right in the fund at all until a loss is ascertained, and the amount of its gross income must be the sum which it collects from these deposits of the members for the purpose of paying operating expenses and losses. Under each statute the net income is to be ascertained by deducting from the gross income the expenses of operation and the losses, which, generally speaking, leaves no net income at all.

The defendants rely upon Penn Mutual Life Insurance Co. v. Lederer, 252 U. S. 523, 40 Sup. Ct. 397, 64 L. Ed. 698, as controlling the present case, but we do not think it does. It arose under the act of 1913, which provides that life insurance companies—

"shall not include as income in any year such portion of any actual premium received from any individual policy holder as shall have been paid back or

credited to such individual policy holder, or treated as an abatement of premium of such individual policy holder within such year." Section 2G (b).

The premiums in question were level premiums; i. e., for a fixed amount. When the court spoke of "premium receipts," it referred to the fixed premiums received by the company, and not to deposits for estimated premiums for each year, as is the case with the plaintiff. The court distinguished between life insurance policies and fire policies, by pointing out that the former were both for protection and investment, whereas the latter were for protection only. So much of the return upon life policies as represented earnings in previous years—e. g., because of forfeited policies, or because the expenses of operation or the extent of mortality had been overestimated in fixing the amount of the premium—was to be included in the gross income; whereas any portion of the premium paid back within the year was not to be so included.

Without going into the details of the assessments, the foregoing will be sufficient to indicate to the parties how the net income of the plaintiff for the years 1912, 1913, 1914, and 1915 is to be ascertained. The plaintiff having by stipulation filed in this court waived certain objections, the consideration of which might delay the final disposition of the cause, the judgment is reversed, and the court below directed to enter a judgment in accordance with this opinion and the stipulation filed.

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes