### JEWELERS' SAFETY FUND SOC. v. EDWARDS, Collector of Internal Revenue (two cases).

(District Court, S. D. New York. March 11, 1926.)

1. **Internal revenue** ⟨⟩7, 9—Jewelers' mutual insurance society, which required members to make deposits to cover losses and expenses, which deposits belonged to members who were credited with interest thereon, held not taxable as "mutual casualty insurance company" (Laws N. Y. 1884, c. 171; Revenue Act 1916, § 12, subd. b [Comp. St. § 6336l]; Laws N. Y. 1853, c. 463, as amended by Laws N. Y. 1879, c. 485; Laws N. Y. 1883, c. 175; Act Cong. March 3, 1917 [39 Stat. 1000]; Revenue Act 1917 [40 Stat. 329]).

Jewelers' mutual insurance society, incorporated by special act (Laws N. Y. 1884, c. 171), to insure its members against certain losses, by-laws of which required members to make a "deposit" or pay "premium" to cover expenses and losses which deposits until used to pay losses and expenses belonged to depositors, who were credited with interest thereon, held not a "mutual casualty insurance company," within Revenue Act 1916, § 12, subd. b. (Comp. St. § 6336l), Laws N. Y. 1853, c. 463, as amended by Laws N. Y. 1879, c. 485, and Laws N. Y. 1883, c. 175, and it was entitled to recover income and excess profits taxes assessed against it under Revenue Act 1916, as amended by Act March 3, 1917, and Revenue Act Oct. 3, 1917.

[Ed. Note.—For other definitions, see Words and Phrases, Mutual Insurance Company.]

2. **Internal revenue** ⟨⟩9—Jewelers' mutual insurance society, membership in which was not confined to any geographical limits, held not exempt from taxation as one of specified organizations of local character (Laws N. Y. 1884, c. 171; Revenue Act 1917, § 504, subd. b [Comp. St. 1918, § 6309¼a]; Revenue Act 1916, § 11, subd. a [10], being Comp. St. § 6336k).

Jewelers' mutual insurance society, incorporated by special act (Laws N. Y. c. 1884, c. 171) to insure its members against certain losses, membership in which was not confined to any geographical limits, held not exempt from tax on premiums, under Revenue Act 1917, § 504, subd. b (Comp. St. 1918, § 6309¼a), as being a "farmers' or other mutual hail, cyclone or fire insurance company, mutual ditch or irrigation company, mutual or co-operative telephone company or like organization of pure-

ly local character," within Revenue Act 1916, § 11, subd. a (10), being Comp. St. § 6336k.

3. **Internal revenue** ⟨⟩9—Statute imposing tax on "premium charged under each policy of insurance" held to include "deposits" paid by members of jewelers' mutual insurance society to cover losses and expenses (Revenue Act 1917, § 504, subd. b. [Comp. St. 1918, § 6309¼a]).

Revenue Act 1917, § 504, subd. b (Comp. St. 1918, § 6309¼a) taxing "premium charged under each policy of insurance" of marine, inland, and fire insurance policies, should not be technically construed to defeat its declared purpose to impose tax on issuance of policies, and it will therefore be construed to include "deposits" made by members of jewelers' mutual insurance society to cover expenses and losses, notwithstanding such deposits belong to depositors until used to pay losses and expenses.

At Law. Actions by the Jewelers' Safety Fund Society against William H. Edwards, Collector of Internal Revenue. Judgment for plaintiff.

Two actions at law, tried together by agreement of the parties before a jury of one, to recover from the collector of internal revenue income, excess profits, and premium taxes paid under protest and alleged to have been wrongfully assessed. Verdict directed for the plaintiff, upon motion made at the trial by each of the parties for a verdict in its favor.

Putney, Twombly & Putney, of New York City (Lemuel Skidmore, Jr., of New York City, of counsel), for plaintiff.

Emory R. Buckner, U. S. Atty., of New York City (Thomas J. Crawford and Sherwood E. Hall, Asst. U. S. Attys., both of New York City, of counsel), for defendant.

THACHER, District Judge. [1] In Jewelers' Safety Fund Society v. Lowe (C. C. A.) 274 F. 93, the present plaintiff sued to recover taxes upon income for the years 1912, 1913, 1914, and 1915, assessed under section 38 of the Act of August 5, 1909 (36 Stat. 11), which imposed an excise tax upon corporations, and section 2G (b) of the Act of October 3, 1913 (38 Stat. 114), which imposed an income tax pursuant to the Sixteenth Amendment of the Constitution. Plaintiff now seeks to recover income taxes for the year 1916, assessed under the Revenue Act of September 8, 1916 (39 Stat. 765), income and excess profits taxes for the year 1917, assessed under the same act, as amended March 3, 1917 (39 Stat. 1000), and October 3, 1917 (40 Stat. 329), and premium taxes assessed under section 504 of the Rev-

enue Act of October 3, 1917 (40 Stat. 315 [Comp. St. 1918, § 6309¼a]).

Assuming for the moment that the plaintiff is not exempt from taxation under the tenth paragraph of section 11 (a) of the Act of September 8, 1916 (39 Stat. 767 [Comp. St. § 6336k]), its liability for income and excess profits taxes depends primarily upon the proper method of determining the amount, if any, of its net income for income tax purposes. Precisely the same question was presented in the Circuit Court of Appeals under prior statutes, which for present purposes are of the same legal effect as the statutes here applicable.

But it is urged by government counsel that the decision of the Circuit Court of Appeals, which was upon demurrer, is not controlling here, because the facts there admitted by the demurrer are said to differ materially from the facts here disclosed by the evidence. The plaintiff's charter was correctly alleged in the complaint which was before the Circuit Court of Appeals. With unimportant exceptions the controlling facts summarized in the court's opinion accord with the facts disclosed by the evidence upon the trial of this action. The evidence here, it is true, descends to particulars, and this court now has before it the plaintiff's by-laws and its forms and methods of doing and recording its business. Income and excess profits taxes have in this case, as in the case before the Circuit Court of Appeals, been assessed upon income derived from funds received from its members on the issuance to them of policies of insurance, and the precise question is whether such income is the property of the plaintiff or of its members.

Government counsel attach much importance to the use of the word "premiums" in the charter and in the original by-laws adopted in 1884, when the corporation was first organized. The charter provisions were considered by the Circuit Court of Appeals. The original by-laws provided:

"Article VII—Premiums.

"Section 1. The executive committee shall determine and fix the rate of premium to be charged upon each contract of insurance, and such premiums shall be liable for losses only which occur under the class of policies from which they were received."

From the use of the term "premiums" in this original by-law it is argued that payments made by the policy holders were ordinary premium payments, which passed to the plaintiff as its property upon receipt. This contention ignores the provision that "such premiums shall be liable for losses only which occur under the class of policies from which they were received." In 1913, and again in 1915, the by-laws were amended, and as amended now contain an accurate statement of the manner in which the plaintiff has conducted its business. The pertinent provisions in force during the entire taxable period here in question are found in articles VI and VII of the present by-laws.

"Article VI—Policies.

"Section 1. A regular form of policy shall be prepared and printed under the supervision of the board of directors, who shall also cause to be prepared and printed such special clauses to be attached to such regular form as they may deem necessary for the different classes of insurance. These forms may be changed from time to time by the action of the board of directors.

"Sec. 2. Policies of insurance of two classes, termed A and B respectively, shall be issued by this society upon approval by the executive committee of applications duly made therefor, and shall be signed by the president and secretary.

"Class A shall include all policies upon goods carried in sample trunks or otherwise in charge of traveling agents, or sent to or from such agents; also upon goods in the custody of the insured, his brokers, clerks, agents, or servants, or of his customers or others to whom they are delivered for selection or repair.

"Class B shall include all policies upon goods forwarded by registered mail or express, except when sent to or from the insured's traveling agent, whose stock of goods is insured by another policy of this society.

"Sec. 3. In class A the person having charge of the goods to be insured must be registered in the Jewelers' Protective Union as an agent for the member named in the policy.

"The total amount of insurance by this society on any stock of goods in charge of any one agent or forming part of the stock intrusted to him shall not exceed one hundred thousand dollars.

"Sec. 4. In class B no policy shall be issued for a sum exceeding twenty thousand dollars, and the sum of fifty per centum of the amount of the policy therein named shall be the limit of all losses taken together which shall be insured by this society upon any goods which shall be in course of transportation to or from the same consignee by the same carrier on the same day or otherwise embraced in the same risk; but more than

one policy may be issued to the same insured covering goods in the course of transportation shipped to or from several manufactories, stores, or offices owned or operated by such insured.

"Sec. 5. When a policy is surrendered, the member shall receive a rebate of a part of the deposit for the unexpired term, estimated at one-half of the original amount of deposit, provided so much shall remain after paying its pro rata of expenses and losses.

### "Article VII—Deposits.

"Section 1. Each applicant for a policy or a renewal thereof shall upon and in consideration of the issuance to him of said policy or renewal, deposit with the society an amount equal to one-fourth of one per cent. in class A and one and one-fourth per cent. in class B of the amount of insurance named in the policy; and such deposits shall be liable for losses only which occur under class A or class B policies, according to the class of policy for which they were received, and for their pro rata share of the expenses.

"Sec. 2. All such deposits which may be paid in shall be used to defray the losses and expenses which shall occur during the period while the policy for which the deposit was made shall continue in force, and the remainder, if any, over what may be needed to pay such losses and expenses, shall one year after the expiration date of the policy, or as soon thereafter as is practicable be divided among the members who have paid in such deposits proportionately to the sums so paid in by them respectively.

"Sec. 3. In addition to the deposits named in sections 1 and 2 of this article, each applicant for membership in the society shall deposit with the society by way of a guaranty deposit an amount equal to one and one-half per cent. in class A and seven and one-half per cent. in class B of the amount of insurance for which such member applies. Said guaranty deposit shall be payable in two equal installments as follows: Three-fourths of one per cent. in class A and three and three-fourths per cent. in class B at the beginning of the first year of membership, and the same amount at the beginning of the second year. If, at any time, a member shall apply for an increased amount of insurance, said member shall make a further guaranty deposit proportionate to the increase in amount of insurance, at the same rate, and in installments similar to those in which the original guaranty deposit was made. If any member shall apply for a decreased amount of insurance, there shall be paid back to such member, or credited to his account, a sum equal to one and one-half per cent. in class A and seven and one-half per cent. in Class B of the amount of such decrease, payable three-fourths of one per cent. in class A and three and three-fourths per cent. in class B one year after the policy of the decreased amount is issued, and the same amount one year thereafter. The amounts so deposited shall constitute a fund, called the safety guaranty fund, and if at any time the deposits paid in by members for their policies, as provided in sections 1 and 2 of this article, shall not be sufficient to meet the losses and expenses incurred during the period over which such policies extended, an amount sufficient to make up the deficiency shall be drawn from the safety guaranty fund and used in defraying said losses and expenses. One year after the expiration date of such policies, or at any earlier date at the discretion of the board of directors, the amount so drawn from the safety guaranty fund shall be apportioned among the members to whom such policies were issued, and each of said members shall deposit with the society a sum equal to his proportionate share of such deficiency.

"Sec. 4. If the membership of any member of the society shall for any reason terminate, the amount, if any, standing to the credit of said member in the safety guaranty fund shall one year after the expiration date of the last policy issued to said member, or as soon thereafter as is practicable, be repaid to said member, his executors, administrators, successors, or assigns."

The evidence discloses that the business of the plaintiff has always been conducted substantially in accordance with these provisions. Amendments which were made from time to time seem to have been impelled by formal changes in business methods, or by a desire to more accurately express the understanding which at all times had prevailed, rather than by any change of substance in the plaintiff's plan for the insurance of its members, which has been substantially unchanged from the start. By reference, these by-law provisions are incorporated in every application for insurance, and are contractually binding between the plaintiff and its members. From the very inception of the plaintiff company, payments made by its members upon the issuance of policies, whether called "premiums" or "deposits," were always received and held by the plaintiff corporation, not as its property, but for the payment of losses, and from necessity,

as indicated in the opinion of the Circuit Court of Appeals, for the payment of a pro rata share of its expenses. I am unable to find any substantial difference between the facts here presented and those considered by the Circuit Court of Appeals. It was there said:

"Members are not liable to assessment until after each loss has occurred, and are not liable to pay until after 60 days' notice of the assessment. For their own convenience, however, they deposit with the company an amount estimated by it to cover expenses and losses incurred during the year, which deposits it invests or carries in bank, and so earns interest. This interest belongs, not to the company, but to the depositors. The company has no right in the fund at all until a loss is ascertained, and the amount of its gross income must be the sum which it collects from these deposits of the members for the purpose of paying operating expenses and losses. Under each statute the net income is to be ascertained by deducting from the gross income the expenses of operation and the losses, which, generally speaking, leaves no net income at all."

It appears from the evidence that interest upon "policy deposits" has at all times been credited to the individual members at the rate of 4 per cent. per annum, and that all interest received by the plaintiff in excess of this amount on all deposits has been credited to the individual members' accounts in the safety guaranty fund. Such interest has always been held by the society for the account of its members and as additions to the deposits required to be made by the by-laws. It is true that members under the by-laws as amended, which were not considered in the Circuit Court of Appeals, are obligated to make deposits before any loss has occurred. But this circumstance is unimportant, because the company has no right either to the deposits or to the interest thereon, except to apply such funds, as required by the by-laws, to the payment of losses and expenses which otherwise would necessarily have to be provided for under the assessment provisions of the charter. The allegations of the complaint in this action with respect to these deposits are precisely the same as the allegations contained in the complaint which was before the Circuit Court of Appeals, and I find them to be fully sustained by the evidence.

It is, however, contended that the plaintiff is a casualty insurance company, and therefore subject to the provisions of section 12 (b) of the Act of September 8, 1916

(39 Stat. 769 [Comp. St. § 6336*l*]), providing a method by which the net income of such companies is to be determined for income tax purposes. A similar provision of law (section 2G [c] of the Act of October 3, 1913, 38 Stat. 175), applying to fire insurance companies, was considered by the Circuit Court of Appeals, and it was there held that this plaintiff was not a fire insurance company within the meaning of the statute. The Act of 1916 extends the provisions of the Act of 1913 to mutual casualty insurance companies, and it is now insisted that by reason of this amendment the plaintiff is taxable as a mutual casualty insurance company.

The plaintiff is not a casualty insurance company under the laws of New York. It was incorporated by special statute (chapter 171, Laws of New York 1884), at a time when the incorporation of casualty insurance companies was provided for under the general statutes (chapter 463, Laws of New York 1853, amended by chapter 485, Laws 1879, and chapter 175, Laws 1883). Its powers are limited to the insurance of its members, who are manufacturers, importers, and dealers in the jewelry trade, against loss or damage to their merchandise by risks of fire, theft, barratry, and embezzlement, and risks of transportation by land or water. Chapter 171, Laws of New York 1884. The business authorized by its charter does not include casualty insurance, as that term is commonly understood (11 Corpus Juris, 30), and consequently it is not a mutual casualty insurance company within the meaning of section 12 (b) of the Act of September 8, 1916 (39 Stat. 769). It follows that the income and excess profits taxes were improperly assessed, and that the plaintiff is entitled to their recovery.

[2] There remains for consideration the taxes imposed pursuant to section 504 of the Act of October 3, 1917 (40 Stat. 315 [Comp. St. 1918, § 6309¼a]), which provides as follows:

"Sec. 504. That from and after the first day of November, 1917, there shall be levied, assessed, collected, and paid the following taxes on the issuance of insurance policies: * * *

"(b) Marine, inland, and fire insurance— A tax equivalent to 1 cent on each dollar or fractional part thereof of the premium charged under each policy of insurance or other instrument by whatever name the same is called whereby insurance is made or renewed upon property of any description (including rents or profits), whether against

peril by sea or inland waters, or by fire or lightning, or other peril."

Under subdivision (d) of this section, policies issued by corporations exempt from income tax under Act of September 8, 1916, are exempted from the so-called "premium tax." Exemption is found in section 11 (a) of the Act of September 8, 1916 (39 Stat. 767 [Comp. St. § 6336k]), providing as follows:

"That there shall not be taxed under this title any income received by any * * * farmers' or other mutual hail, cyclone, or fire insurance company, mutual ditch or irrigation company, mutual or co-operative telephone company, or like organization of a purely local character, the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting its expenses."

While it may be said that the plaintiff's income consists solely of assessments collected from its members for the purpose of meeting its expenses, it is not one of those companies specifically named, nor is it a like organization of a purely local character. The evidence discloses that while it confines its membership and business to importers, manufacturers and dealers in the jewelry trade, there are no geographical limits within which its operations are confined. It must therefore be held not to be an organization of a purely local character, and not exempt from the provisions of section 504 of the Act of October 3, 1917, if that act is otherwise applicable to it. By virtue of that statute the tax is in terms imposed on the "issuance of insurance policies." Under section 504 (b) it is measured by "the premium charged under each policy of insurance."

[3] It is not disputed that the plaintiff issued insurance policies upon which the tax has been imposed. The effort is to defeat the tax by contending that there are no premiums charged under the policies issued. Inasmuch as the express intention is to impose the tax upon the issuance of insurance policies, and to measure the amount of the tax by the premium charged, the words "the premium charged under each policy of insurance" should not be technically construed, so as to defeat the declared purpose of the statute to impose the tax upon the issuance of the policies. Therefore, without in any way qualifying the conclusion already reached herein, or departing from the decision of the Circuit Court of Appeals in the former case, these words should be construed in accordance with the intention of the statute, so as to include the payments made to the plaintiff by its members upon the issuance of insurance policies to them. It follows that the plaintiff is entitled to a verdict for the recovery of the income and excess profits taxes for the years 1916 and 1917, while the defendant is entitled to the direction of a verdict in its favor upon the second cause of action alleged in the complaint in action No. 2.

A verdict in accordance herewith will be directed in open court on March 15, immediately after the call of the calendar. In the meantime, counsel are requested to agree upon the amount, with interest to that date.