### JEWELERS' SAFETY FUND SOC. v. EDWARDS, Collector of Internal Revenue.

### EDWARDS, Collector of Internal Revenue, v. JEWELERS' SAFETY FUND SOC.

Circuit Court of Appeals, Second Circuit.
February 4, 1928.

Nos. 13, 14.

1. **Internal revenue** ⟐7(24) 9(27)—Use of word "premium" in by-laws of mutual insurance company was not conclusive on whether amounts paid constituted income, subject to tax (Revenue Act 1916, as amended).

Use of word "premium" in by-laws of mutual insurance company was not conclusive on question whether or not amounts paid by members constituted income to insurance company, subject to income and excess profits taxes under Revenue Act 1916 (39 Stat. 756), as amended by Act March 3, 1917 (39 Stat. 1000), and Act Oct. 3, 1917 (40 Stat. 329).

2. **Internal revenue** ⟐7(23), 9(27)—Deposits with mutual insurance company, used only to pay losses and expenses, balance being returned to members, were not income subject to tax (Revenue Act 1916, as amended).

Where mutual insurance company was operated on assessment plan, and under charter could assess members for pro rata share of loss occurring or to recover expenses neces-

sary to its business, and deposits of members were used only to pay losses and expenses, and balance was returned to members, so that no reserve was built up, there was no income, subject to income tax and excess profits taxes under Revenue Act 1916 (39 Stat. 756), as amended by Act March 3, 1917 (39 Stat. 1000), and Act Oct. 3, 1917 (40 Stat. 329).

**3. Internal revenue ☞7(23), 9(27)—Interest on invested deposits of mutual insurance company, where excess, after meeting members' obligations, was returned to members, was not subject to income tax, but could be deducted from gross "income" (Revenue Act 1916, and § 12 [a], second [c], [b]; Comp. St. § 6336*l*).**

Interest on invested deposits of mutual insurance company, which was considered and treated as belonging to members, and as far as it went met obligation of members, excess being returned to members, was not "income" received by insurance company, within meaning of Revenue Act 1916 (39 Stat. 768), § 12(b), being Comp. St. § 6336*l*, and insurance company was not required to return it as net taxable income assessable under Revenue Act 1916 (39 Stat. 756), as amended by Act March 3, 1917 (39 Stat. 1000), and Act Oct. 3, 1917 (40 Stat. 329); but such interest could be deducted from gross income under section 12 (a), second (c).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

**4. Internal revenue ☞9(7)—Mutual insurance company held chargeable with premium tax, though not subject to income or excess profits taxes (Revenue Act 1917, § 504 [Comp. St. § 6309¼a]; Revenue Act 1916, as amended).**

Under Revenue Act 1917, § 504 (Comp. St. § 6309¼a), granting exemption of premium tax to certain insurance companies, mutual insurance company *held* liable for premium tax on deposits of members which were used only to pay losses and expenses, balance being returned to members, though insurance company was not subject to income or excess profits taxes, under Revenue Act 1916 (39 Stat. 756), as amended by Act March 3, 1917 (39 Stat. 1000), and Act Oct. 3, 1917 (40 Stat. 329).

In Error to the District Court of the United States for the Southern District of New York; Thomas D. Thacher, Judge.

Actions by the Jewelers' Safety Fund Society against William H. Edwards, Collector of Internal Revenue. In the first action, plaintiffs recovered judgment on their first cause of action, and judgment was for defendant on the second cause of action, and in the second action judgment was rendered for plaintiff (12 F.[2d] 458), and each party brings error. Affirmed.

Putney, Twombly & Putney, of New York City (Lemuel Skidmore, of New York City, of counsel), for plaintiff.

Charles H. Tuttle, U. S. Atty., of New York City (Thomas J. Crawford and Frank Chambers, Asst. U. S. Attys., both of New York City, and Edward H. Horton, Sp. Atty. Bureau Internal Revenue, of Washington, D. C., of counsel), for defendant.

Clarence C. Fowler, of New York City (Lemuel Skidmore, of New York City, of counsel), for Superintendent of Insurance.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. We shall refer to the parties as below.

The first of these actions is brought to recover income tax paid in 1916, assessed under the 1916 Revenue Act (39 Stat. 756), and a tax on premiums paid under section 504 of the Revenue Act of 1917 (40 Stat. 315 [Comp. St. § 6309¼a]). The second action is for excess profits taxes for 1917 assessed under the provisions of the Act of September 8, 1916 (39 Stat. 756) as amended March 3, 1917 (39 Stat. 1000) and October 3, 1917 (40 Stat. 329). The first action resulted in a verdict on the first cause of action for the plaintiff and on the second cause of action for the defendant. The second action resulted in a directed verdict for the plaintiff. Cross-writs of error have been sued out.

A recital of the important facts is necessary. Plaintiff is a corporation created by special act of the New York Legislature (chapter 171 of the Laws of 1884). By its charter the corporation is empowered to insure its members against loss of and damages to jewelry of various kinds, against risks of fire, theft, barratry, or embezzlement, and loss in transportation. Its membership is limited to manufacturers or importers of, and wholesale or retail dealers in, jewelry and other specified kinds of merchandise carried by jewelers. The charter provides that the plaintiff shall have power to levy assessments upon its members for the payment of losses, and these are levied against all who are members when the loss occurs, and in proportion to the amount of the insurance held by each member. Plaintiff issued (a) a salesman's stock policy, covering goods in the custody of salesmen of a member; (b) a broker's and messenger's policy, covering the goods in custody of brokers for the members, or clerks or messengers or carriers of the members, to whom goods had been entrusted for delivery; and (c) package shipment policy, covering goods in the course of shipment by registered mail or express. These policies were limited to losses occurring outside of the stores, offices, or factories of the members within the Unit-

ed States and Canada. Members who joined the plaintiff were grouped into two classes: (1) Those who took out policies of the salesmen, brokers and messengers class; (2) policies of the package shipment class. The deposits made by the members of each class were kept separate, and deposits of each member were liable for losses occurring only under the particular class to which the member belonged.

Assessments were not made after each loss of the plaintiff, but, by arrangement with the members and pursuant to its by-laws, as each was admitted to membership and the policy of insurance was delivered, two deposits, one known as the "policy deposit," and the other as the "safety guaranty fund deposit," were made. The policy deposit was one-fourth of 1 per cent. of the amount of the insurance, and the safety guaranty fund deposit was three-fourths of 1 per cent. of the same amount. Policies were issued but for one year, and if the member continued his insurance another year he was required to make another deposit of three-fourths of 1 per cent. in the safety guaranty fund deposit, so that that total became 1½ per cent. Those holding policies of the package shipment class deposited 1¼ per cent. to the policy deposited and 3¾ per cent. to the safety guaranty fund deposit, and if the member continued a second year this would be increased to 7½ per cent. Each policy was issued in consideration of the deposits of the member. The deposits were placed in the bank, and from time to time the directors ordered investments to be made of what they deemed a surplus amount. The policy deposits made by a member at the time his original policy was issued were paid back to him after two years, or one year after the expiration of his policy; the one year being deemed necessary to determine the losses which had occurred during the period of the policy. From the amount of the deposit there was deducted the member's share of the expenses and the losses sustained during the period. The safety guaranty fund deposit was not returned until one year after he finally severed his connection with the plaintiff. If a member increased his insurance, he was required to pay an additional safety guaranty fund deposit, and if he decreased the amount of the insurance a commensurate portion thereof was returned to him. Interest was received on the invested deposits, and interest at 4 per cent. was credited to the safety guaranty fund deposit.

When return was made to a member of his policy deposit, less his expenses and loss-es, the 4 per cent. interest on his deposits was added to the amount of the policy deposit. There was added the member's pro rata share of the balance of the interest received by the plaintiff on his invested deposits, and from this amount was deducted the member's pro rata share of the expenses and losses during the period his policy was in effect. It was the balance which was returned to the member. Each member's account was kept separate on the books of the plaintiff. It had a president, two vice presidents, a secretary and treasurer. The president and secretary each received a small salary. All of the officers, except the secretary and treasurer, were jewelers. The office used by the plaintiff was rented in the name of the secretary and treasurer.

The return for 1916 was made under protest as applicable to insurance companies of the mutual life and mutual marine class. It showed an excess of receipts over disbursements, and on the basis of this return the assessment is made. Later the plaintiff filed an amended return for 1916, as required by mutual insurance companies other than mutual life and mutual marine companies. This, too, was filed under protest. The return stated that the insurance was received as agent for the members. Its 1917 income tax return filed showed excess profits tax. It was made on the theory that the plaintiff had no capital, and the tax assessed was in addition to the income tax computed on the interest received.

The Act of October 3, 1917 (section 504, 40 Stat. 315), imposed a tax on insurance companies of 1 per cent. of the premium charged under each policy of insurance. The plaintiff, objecting, made monthly returns and paid taxes at this rate on policy deposits received from members during the period. The court below held that the plaintiff, while a mutual insurance company within the meaning of the Revenue Act of 1916, had no net income, and was not liable for income tax for that year, or excess profits taxes for 1917. It held that the tax of 1 per cent. of the policy deposits received from the members and assessed was valid, and denied the plaintiff's recovery.

[1] The plaintiff's claim, upon which it succeeded below, is that it had no income subject to tax in 1916 or 1917. We held that this plaintiff was not subject to income tax under the act of 1909 (36 Stat. 11, 114). Jewelers' Safety Fund Society v. Lowe, etc. (C. C. A.) 274 F. 93. But it is argued that the directors were authorized by the by-laws to adopt rates of premium, and the executive

committee was authorized to determine and fix the rate of premium to be charged upon each contract of insurance. The use of the word "premium" is not conclusive, for the question is whether or not the amounts paid by the members constituted income to the plaintiff. Merely calling a deposit a premium does not make it one, as that term is commonly understood. The true nature of the payment, where it affirmatively appears, must be considered. It is quite clear, from the facts stated above, that the plaintiff was operated on an assessment plan, and under its charter it was entitled to assess a member for his pro rata share of any loss which occurred, and it also had the power to assess to cover the expenses necessary to its business. The interest earnings on invested deposits, which the directors determined to invest, were used to help meet the expenses and lower the amount of the deposits. If there were a balance left, it went back pro rata to each member, plus the balance of the deposit after the expiration of the stated time.

[2] No moneys were used, except for authorized purposes of losses and expenses, and the return to the member was his share of what remained. No reserve was built up. The deposits never became income. There was no gain or profit for the plaintiff. Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886; Brewster v. Walsh (D. C.) 268 F. 207. The deposits by the bookkeeping records, as in point of fact, always remained the property of the members. Expressions in the by-laws are entirely consistent with this. The company had no right in the fund until a loss was ascertained, and the amount of the gross income was the sum which it collected from these deposits of the members for the purpose expressed, namely, to meet the expenses and pay losses. If the losses exceeded the amount of the deposits, each member would have to make an additional deposit.

This case differs from Pickering v. Alyea-Nichols Co. (C. C. A.) 21 F.(2d) 501, where it was held that a group of interinsurers were insurers, and subject to tax on earned income. There the applicant, upon taking out a policy, paid three years' application fee as an advance premium. The so-called fee was kept, and not returned until the policy was canceled by the attorney in fact within the three-year period, in which event a proportion of the application fee was returned. As to subsequent deposits made by members, when a member terminated his insurance, the entire unused balance of the deposits was returned to him. But a fixed amount of the deposit was retained to take care of possible contingencies. Substantial reserves were built up, and earnings made thereon. In the case at bar, considering the plaintiff was obliged to and did repay every cent, except the amounts actually applied to the members' share of expenses and losses, the building of a reserve fund was impossible. In the Alyea-Nichols Case, supra, the court refers to the income "as interest from investments and premium receipts and reserves." This could only be the invested application fees or advanced premiums retained by the attorney in fact out of the members' deposits, which built up the reserve. The case is distinguishable from this.

[3] We need not say whether or not the plaintiff may be classed as a mutual fire or casualty insurance company under the Act of September 8, 1916 (39 Stat. 768, § 12[b], being Comp. St. § 6336l), which provides that "mutual fire * * * and mutual casualty insurance companies requiring their members to make premium deposits to provide for losses and expenses shall not return as income any portion of the premium deposits returned to their policy holders, but shall return as taxable income all income received by them from all other sources plus such portions of the premium deposits as are retained by the companies for purposes other than the payment of losses and expenses and reinsurance reserves"; for, as we held in Jewelers' Safety Fund Society v. Lowe, supra, the interest on the invested deposits was not income to the plaintiff, but was considered and treated as belonging to the member, and, as far as it went, met the obligation of the members, and any excess was credited and returned to the members. Such interest was not income received by the plaintiff within the meaning of the act, and the plaintiff is not required to return it as net taxable income under that section.

But, if the language of section 12 of the Revenue Act of 1916 be read broadly enough to include the plaintiff in error within the term *mutual fire* and *mutual casualty company*, the same result is reached. It seems clear that the foregoing clause expressly dispenses with a return for taxation of "any portion of the premium deposits returned to their policy holders."

If it be argued that the subsequent words, which require a "return as taxable income of income received by them from all other sources plus such portions of the premium deposits as are retained by the companies for purposes other than the payment of loss-

es and expenses and reinsurance reserves," includes interest paid back to the policyholder along with unexpended deposits, such a construction seems uncalled for by the terms of the proviso. The object of the proviso was evidently to differentiate moneys in which the mutual company as a going concern had no interest from earnings (whether premiums or interest) used to build up its capital or to maintain a reserve. The object of the proviso would seem to be to render premiums and other earnings consumed in the expenses of the business or directly restored to the policy holders as an obligation incident to the original deposit nontaxable.

It is suggested that the foregoing argument cannot stand, by reason of the terms of the second provision of section 12a (2d) (c), relating to mutual marine insurance companies. These companies are allowed to include in deductions from gross income amounts repaid to policy holders on account of premiums previously paid by them and interest paid upon such amounts between the ascertainment thereof and the payment thereof.

It is said that interest was thus specifically dealt with, and that, if any deduction of interest had been intended in the first proviso, it would have been mentioned there. The terms of the second proviso do not seem to justify this argument. The plaintiff in error cannot, in view of its financial structure, build up reserves. It must return to its policy holders everything not required to pay its expenses and liquidate losses. The mutual marine insurance companies referred to in the second proviso evidently are not designed to return to policy holders all unexpended earnings, but only to return interest which has accrued between the date of the ascertainment of the rebate and their return. We think that a proper construction of the first proviso allows a deduction of interest, as well as returned premiums.

[4] The court below held that, pursuant to section 504 of the Revenue Act of 1917, the plaintiff was properly chargeable with the premium tax therein imposed. It is a tax on the issuance of insurance policies. The contention of the plaintiff is that it was not taxable under this section, because it was exempt therefrom by reason of the provisions of section 504, whereby exemption for premium tax was granted to those companies which were exempt from payment of income tax, and because the policy deposits were not premiums charged within the section. But the tax therein imposed is laid upon the issuance of all types of insurance policies, excepting only policies issued by corporations, partnerships, or associations specifically exempt from payment of income tax.

We think the intention of the statute was to include the payments such as were made to this plaintiff by its members upon the issuance of insurance policies to them. The statute provides for a tax on the issuance of policies of fire and casualty equivalent to 1 per cent. on each dollar or fractional part thereof of premium charged upon each policy of insurance, and the plaintiff issued insurance policies upon which this tax was imposed. It matters not whether it be called a deposit or premium; it was the cost of the insurance, and the plaintiff comes within the provisions of the statute.

The judgment entered in each action is affirmed.