## BOWERS, COLLECTOR, *v.* KERBAUGH-EMPIRE COMPANY.

### ERROR TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 173.   Argued January 25, 1926.—Decided May 3, 1926.

Plaintiff borrowed money from a bank in Germany before the War, repayable in marks or their equivalent in gold coin of the United States, lost the borrowed money in business, and repaid the loan to the Alien Property Custodian in 1921, when marks had greatly depreciated, the amount of the depreciation, however, being less than the losses sustained on the entire transaction. *Held* that the difference, resulting from the depreciation, between the amount borrowed and the amount repaid, in American money, was not taxable as "income." P. 173.

300 Fed. 938, affirmed.

ERROR to a judgment of the District Court recovered by the Company from the Collector in an action for money paid under protest as income tax.

*Assistant Attorney General Willebrandt,* with whom *Solicitor General Mitchell* and *Messrs. Sewall Key, A. W. Gregg,* and *F. W. Dewart* were on the brief, for plaintiff in error.

The cash gain realized by plaintiff as the result of borrowing foreign money and discharging its debt at a rate of exchange lower than that at which the loan was made

is taxable income to it for the year in which the debt was paid. *Stratton's Independence* v. *Howbert,* 231 U. S. 399; *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179; *Hays* v. *Gauley Mt. Coal Co.,* 247 U. S. 189; *Eisner* v. *Macomber,* 252 U. S. 189; *Carbon Steel Co.* v. *Lewellyn,* 251 U. S. 501.

The fact that defendant in error was not a dealer in foreign exchange, or that the transaction was not entered into by it with any idea of gain, is immaterial. This Court has definitely decided that increase in capital assets resulting from isolated or casual transactions outside a taxpayer's ordinary business operations is constitutionally taxable. *Merchants L. & T. Co.* v. *Smietanka,* 255 U. S. 509; *Eldorado Coal Co.* v. *Mager,* 255 U. S. 522; *Goodrich* v. *Edwards,* 255 U. S. 527; *Walsh* v. *Brewster,* 255 U. S. 536; *Baldwin Locomotive Wks.* v. *McCoach,* 221 Fed. 59.

The reality of the transaction is that defendant in error sold its promise to pay a certain number of marks for $764,867.30, and later bought this promise back for $80,-411.12. *People ex rel. Keim* v. *Wendell,* 193 N. Y. Supp. 143; *Great Northern Ry.* v. *Lynch,* 202 Fed. 903. The case of *United States* v. *Oregon-Washington R. R. & Nav. Co.,* 251 Fed. 211, is not in point.

· *Mr. Franklin Nevius,* with whom *Messrs. Harvey D. Jacob* and *Asa B. Kellogg* were on the brief, for defendant in error.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Defendant in error, a New York corporation, sued to recover $5,198.77 paid under protest on account of income taxes for 1921. Revenue Act of 1921, c. 136, 42 Stat. 227, 252, *et seq.*

It owned all the capital stock of H. S. Kerbaugh, Incorporated, engaged in the performance of large construction contracts, and applied to the Deutsche Bank of Germany,

through its New York representative, for loans to finance the work being done by its subsidiary. The bank agreed that it would make the loans by cabling to the credit of its New York representative German marks equivalent in dollars to the requirements of defendant in error, upon condition that the loans would be evidenced by notes payable as to principal and interest in marks or their equivalent in United States gold coin at prime bankers' rate in New York for cable transfers to Berlin. June 8, 1911, defendant in error advised the New York representative of the amount in dollars then needed; he notified his principal and it put to his credit in a New York bank marks equivalent to the amount of money of the United States applied for. Then he drew his check payable in dollars against the credit and gave it to defendant in error, and in exchange received the promissory note of the latter payable in marks or their equivalent in gold coin of the United States. Prior to July 2, 1913, twenty-four loans were made in this manner amounting in all to $1,983,000. The equivalent in marks was 8,341,337.50. September 1, 1913, there remained unpaid 6,740,800 marks. The notes of defendant in error then outstanding were surrendered and its new note for that amount was given. And when that note became due it was renewed. Partial payments were made and, by March 31, 1915, the principal was reduced to 3,216,445 marks.

The several amounts from time to time borrowed by defendant in error were contemporaneously advanced to its subsidiary and were expended and lost in and about the performance of the construction contracts. These losses were sustained in 1913, 1914, 1916, 1917 and 1918, and were allowed as deductions in the subsidiary's income tax returns for those years. The excess of its losses over income was more than the amount here claimed by plaintiff in error to be income of defendant in error in 1921.

After the United States entered the War the Deutsche Bank was an alien enemy. In 1921, on the demand of the Alien Property Custodian, defendant in error paid him $113,688.23 in full settlement of principal and interest owing on the note belonging to the bank. Of that amount $80,411.12 represented principal. The settlement was on the basis of two and one-half cents per mark. Measured by United States gold coin the difference between the value of the marks borrowed at the time the loans were made and the amount paid to the Custodian was $684,456.18. The Commissioner of Internal Revenue, notwithstanding the claim of defendant in error that the amount borrowed had been lost in construction operations carried on by it and its subsidiary and that no income resulted from the transaction, held the amount to be income and chargeable to defendant in error for 1921. Excluding that item the tax return for 1921 shows a deficit of $581,254.77.

The defendant in error by its complaint set forth the facts above stated and asserted—as it still insists—that the diminution in value of the marks was not income within the meaning of the Sixteenth Amendment; that the item in controversy is not within the Revenue Act, and that, if construed to include it, the Act would be unconstitutional. Plaintiff in error moved to dismiss on the ground that the complaint failed to state facts sufficient to constitute a cause of action. The court denied the motion and gave judgment for defendant in error. This writ of error was taken under § 238, Judicial Code, before the amendment of February 13, 1925, c. 229, 43 Stat. 936, 938.

The question for decision is whether the difference between the value of marks measured by dollars at the time of payment to the Custodian and the value when the loans were made was income.

The Sixteenth Amendment declares that Congress shall have power to levy and collect taxes on income, "from

whatever source derived " without apportionment among the several States, and without regard to any census or enumeration. It was not the purpose or effect of that Amendment to bring any new subject within the taxing power. Congress already had power to tax all incomes. But taxes on incomes from some sources had been held to be "direct taxes" within the meaning of the constitutional requirement as to apportionment. Art. I, § 2, cl. 3, § 9, cl. 4; *Pollock* v. *Farmers' Loan and Trust Co.*, 158 U. S. 601. The Amendment relieved from that requirement and obliterated the distinction in that respect between taxes on income that are direct taxes and those that are not, and so put on the same basis all incomes " from whatever source derived." *Brushaber* v. *Union Pac. R. R.*, 240 U. S. 1, 17. " Income " has been taken to mean the same thing as used in the Corporation Excise Tax Act of 1909, in the Sixteenth Amendment and in the various revenue acts subsequently passed. *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, 335; *Merchants L. & T. Co.* v. *Smietanka*, 255 U. S. 509, 519. After full consideration, this Court declared that income may be defined as gain derived from capital, from labor, or from both combined, including profit gained through sale or conversion of capital. *Stratton's Independence* v. *Howbert*, 231 U. S. 399, 415; *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179, 185; *Eisner* v. *Macomber*, 252 U. S. 189, 207. And that definition has been adhered to and applied repeatedly. See e. g. *Merchants L. & T. Co.* v. *Smietanka, supra*, 518; *Goodrich* v. *Edwards*, 255 U. S. 527, 535; *United States* v. *Phellis*, 257 U. S. 156, 169; *Miles* v. *Safe Deposit Co.*, 259 U. S. 247, 252–253; *United States* v. *Supplee-Biddle Co.*, 265 U. S. 189, 194; *Irwin* v. *Gavit*, 268 U. S. 161, 167; *Edwards* v. *Cuba Railroad*, 268 U. S. 628, 633. In determining what constitutes income substance rather than form is to be given controlling weight. *Eisner* v. *Macomber, supra*, 206.

The transaction here in question did not result in gain from capital and labor, or from either of them, or in profit gained through the sale or conversion of capital. The essential facts set forth in the complaint are the loans in 1911, 1912, and 1913, the loss in 1913 to 1918 of the moneys borrowed, the excess of such losses over income by more than the item here in controversy, and payment in the equivalent of marks greatly depreciated in value. The result of the whole transaction was a loss.

Plaintiff in error insists that in substance and effect the transaction was a "short sale" of marks resulting in gain to defendant in error. But there is no similarity between what was done and such a venture. A short seller borrows what he sells, and the purchase price goes to the lender and is retained as security for repayment. The seller receives nothing until he repays the loan. Such a transaction would not meet the requirements of defendant in error. It needed the money for use and received the amount borrowed and expended it.

The contention that the item in question is cash gain disregards the fact that the borrowed money was lost, and that the excess of such loss over income was more than the amount borrowed. When the loans were made and notes given, the assets and liabilities of defendant in error were increased alike. The loss of the money borrowed wiped out the increase of assets, but the liability remained. The assets were further diminished by payment of the debt. The loss was less than it would have been if marks had not declined in value; but the mere diminution of loss is not gain, profit or income.

*Judgment affirmed.*

Mr. Justice Brandeis concurs in the result.