## APPEAL OF INDEPENDENT BREWING COMPANY OF PITTS-BURGH.

Docket No. 3242.        Decided September 18, 1926.

1. Payments by a brewery corporation of dues to a brewery association organized and legally conducted for the purpose of furthering the interests of its members are ordinary and necessary expenses deductible from gross income in the corporation's income-tax returns.

2. The taxpayer corporation purchased 476 of its own bonds in 1919 at less than the issue price. *Held*, that it received no taxable income from such purchase.

*B. H. Feldstein, Esq.*, for the petitioner.
*E. C. Lake, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income and profits tax for the year 1919 in the amount of $20,610.48. The questions in issue are (1) whether the taxpayer is entitled to deduct from gross income in its income-tax return for 1919 amounts paid as dues to various brewery associations, and (2) whether the taxpayer received any income from the purchase of its own bonds which it did not retire or cancel during the year.

### FINDINGS OF FACT.

The taxpayer is a Pennsylvania corporation with its principal office in Pittsburgh. In its income-tax return for the year 1919, it deducted from gross income amounts paid brewery associations as follows:

| | |
|---|---:|
| Western Pennsylvania Brewers Association | $1,896.88 |
| Westmoreland County Brewers Association | 524.12 |
| United States Brewers Association | 6,236.00 |
| United States Brewers Association (attorneys' fees) | 8,340.16 |
| | 16,997.16 |

The Western Pennsylvania Brewers Association was a trade organization carried on by brewers of Western Pennsylvania. During 1919, it maintained an office in Pittsburgh where the brewers from the vicinity of the city met and discussed matters of interest to them. It was not used or intended to be used in lobbying for the promotion or the defeat of legislation. The Westmoreland County Brewers Association was a small trade organization maintained by the brewers of Westmoreland County; no part of the money paid to it was expended in lobbying for the promotion or the defeat of legislation. The United States Brewers Association was a large organization to which the principal brewers throughout the United States belonged. Its income was used for the promotion of the interests of the brewery industry. It maintained an office at Washington, D. C. It was interested in contesting the constitutionality of the Prohibition Amendment to the Constitution of the United States and the contribution of the taxpayer to this association during the year 1919 of $8,340.16 for attorneys' fees was in connection with this litigation.

The taxpayer corporation was organized in February, 1905, at which time it executed a first mortgage to the Colonial Trust Company of Pittsburgh, as trustee, securing an issue of $4,500,000 of bonds, 4,500 in number of the par value of $1,000 each. The original mortgage contained no sinking-fund agreement. A supplement thereto was duly made and executed by the taxpayer on July 28, 1909, which provided for a sinking fund for the retirement of the bonds issued under the mortgage, the taxpayer agreeing to pay to the trustee not less than $50,000 in each year, payments to begin on December 1, 1911.

From December 1, 1911, to December 31, 1918, inclusive, the taxpayer made payments to the trustee of its sinking fund in accordance with the supplemental agreement of July 28, 1909, and the trustee acquired bonds of the taxpayer which it kept alive in the sinking fund. Most, if not all, of these bonds were acquired directly from the taxpayer at par. All of the bonds so sold to the trustee were rubber stamped " Not Negotiable." The coupons on the bonds, however, were not marked in any manner and in all cases the taxpayer's books of account show the payment upon each interest-paying date of the full amount of interest accrued upon its $4,500,000 of bonds issued. The trustee has never sold or parted with any of the bonds which have been acquired by it.

During the year 1919, the market price of the taxpayer's bonds became very much depressed and, in order to support the price, the

taxpayer purchased in the open market 476 of its bonds, paying therefor $251,825.69. These bonds were not cancelled and the tax-payer's books of account show interest paid on them the same as on the bonds held by the trustee of its sinking fund and those held by the public.

During the year 1919, the taxpayer sold to the trustee for the sinking fund 30 of its bonds which it purchased from the public during the year 1919 at a cost of $14,351.17, receiving therefor $30,000 cash. The difference between the $30,000 received from the trustee and the amount paid by the taxpayer for the bonds was $15,648.83.

In the making of its income-tax return for 1919, the taxpayer reported $1,400 profit upon bonds purchased and sold to the trustee during the year. The Commissioner has determined that the profit to the taxpayer upon the purchase of the bonds was the difference between the par value, $476,000, and $251,825.69, the amount paid therefor, or $224,174.31, and since the taxpayer accounted for only $1,400 profit in its income-tax return, the Commissioner has added to the gross income reported $222,774.31. The Commissioner has determined that the net income of the taxpayer for the calendar year 1919 was $223,128.53. The taxpayer had no net income for 1919 if the assumed profit of $224,174.31 upon the purchase of bonds from the public be eliminated from the gross income.

In 1920 and subsequent years, the taxpayer was from time to time the successful bidder for the sale of bonds to the trustees of its sinking fund, and in 1921 and 1922 it sold to the trustee many bonds at less than the price at which it had acquired them from the public in 1919. Of the 476 Independent Brewing Company bonds purchased by the taxpayer from the public during the year 1919, 372 were sold by the taxpayer to the Colonial Trust Company of Pittsburgh, as trustee of its sinking fund, and no bonds have been sold to any other purchaser. On June 30, 1925, 104 of the bonds purchased by the taxpayer during the year 1919 were still owned by it.

OPINION.

SMITH: In the year 1919, the taxpayer paid dues to the Western Pennsylvania Brewers Association, the Westmoreland County Brewers Association, and the United States Brewers Association. In addition it paid to the last named association $8,340.16 as its pro rata share of the fees of attorneys employed by the United States Brewers Association to test the constitutionality of the Prohibition Amendment to the Constitution. In its income-tax return for 1919, the taxpayer deducted the payment of these dues and attorneys'

fees as ordinary and necessary expenses and the deduction has been disallowed by the Commissioner.

We think that the amounts paid constituted ordinary and necessary expenses. All of the brewers associations mentioned were, so far as the record indicates, performing lawful services for their members and such services were in furtherance of the members' business. It does not appear from the record that the taxpayer was under any legal obligation to make a contribution for the attorneys' fees but it was perfectly legal for the brewers association to test the constitutionality of the Prohibition Amendment and the payment by the taxpayer of its proportion of the fees was an ordinary and necessary expense of doing business.

The Commissioner has added to the taxpayer's gross and net income for the year 1919, $222,774.31 alleged profit on the purchase by it of its own outstanding bonds. This amount plus $1,400 returned by the taxpayer as income constitutes the difference between the par value of the bonds purchased and the amount paid therefor. The Commissioner has treated this difference as profit under article 544 of Regulations 45, which provides that where a corporation " purchases and retires any of such bonds at a price less than the issuing price or face value, the excess of the issuing price or face value over the purchase price is gain or income for the taxable year." The taxpayer denies that it derived any taxable income as a result of the purchase of its bonds from the public during the year 1919, or from the sale of 30 of the bonds to the trustee of its sinking fund during that year, but that in any event the only income which it received was a profit of $15,648.33 upon the 30 bonds sold to the trustee at par during 1919.

The facts in this case are undeniably that the brewery properties of the taxpayer had greatly depreciated in market value as a result of national prohibition. As a result of such depreciation in value large blocks of its bonds were thrown upon the market at any price that they would bring. When the quotation got below 40 per cent of the face value of the bonds, the taxpayer went into the market to support it. The Commissioner contends that, inasmuch as these bonds were issued many years ago at the face value, the taxpayer derived an income in 1919 from the purchase of these bonds equal to the difference between the issue price and the purchase price and contends that the transaction is analogous to a short sale.

In our opinion the taxpayer derived no taxable income from the purchase of its own bonds at less than the issue price. Certainly the transaction was not analogous to a short sale. The facts are simply that during the taxable year the taxpayer used a portion of its cash

on hand to pay a portion of its debts. Whether it will ever be able to pay the balance of them is uncertain. We think that the principle laid down by the court in *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, is controlling here.

*Judgment for the petitioner.*

GREEN, LOVE, STERNHAGEN, and TRAMMELL dissent.