SANFORD & BROOKS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11021.   Promulgated April 9, 1928.

*Harry N. Baetjer, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, for the respondent.

454

OPINION.

LITTLETON : The first question is whether the amount of the judgment constitutes income at any time. The petitioner, through its principal, the Atlantic Dredging Co., had a contract with the Government for the dredging of a part of the Delaware River. During 1913, 1914, and 1915 material was removed and payment made therefor on the unit basis set out in the contract and a supplemental contract later entered into. During these years, the petitioner experienced difficulty in carrying on its operations and the undertaking proved an unprofitable one, partly, at least, for the reason that the material to be dredged was found to be more difficult of removal than that set out in the specifications forming the basis of the contract. In December, 1915, petitioner refused to proceed with the contract and in 1916 brought suit in the Court of Claims to recover an additional amount under the contract, alleging misrepresentations on the part of the governmental contracting officers. The Court of Claims, in 1918, allowed recovery of the difference between the amount expended by petitioner in carrying on the ·work under the contract and the amount which had already been paid on account thereof. This judgment was affirmed by the Supreme Court in 1920, when it was paid. While it appears that the petitioner sought in this action to recover amounts for prospective profits, use of its plant, and certain overhead charges and office expense, the judgment limited the recovery to the difference between the amount expended in connection with work under the contract and the amount previously paid for the work done. In concluding its decision, the Court of Claims made the following statement which is indicative of the character of the payment:

But if the plaintiff had been induced to enter into the contract by representations as to the character of the material to be dredged, and upon which it was

entitled to rely, and which turned out to be untrue, then at any stage of the work it had the right to stop work and to sue to recover for whatever amount might be justly due it *for the work which it had already performed.* (Italics ours.)

The Supreme Court in affirming the decision of the Court of Claims said:

The Government makes the point, however, that the implication of the case is that bad methods were used, and insists that the implication makes the action one for a tort, and not tenable against the United States. We cannot assent. There is no intimation of bad faith against the officers of the Government and the Court of Claims regarded the representation of the character of the material as the nature of a warranty; besides, *its judgment is in no way punitive. It is simply compensatory of the cost of the work, of which the Government got the benefit.* (Italics ours.)

At the outset, it should be noted that we are here concerned with whether the amount of this judgment is properly to be included in petitioner's gross income, and not whether the judgment constitutes an amount of net income subject to tax. Section 233 (a) of the Revenue Act of 1918 provides in the case of a corporation that " gross income means the gross income as defined in section 213 " with certain exceptions not here material. Section 213 (a) reads as follows:

That for the purposes of this title (except as otherwise provided in section 233) the term " gross income "—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period; but * * *

In view of the fact that the Court of Claims held that the amount paid was an amount " due it for the work which it had already performed " and in view of the statement of the Supreme Court that the judgment was " in no way punitive " but was " simply compensatory of the cost of the work of which the Government got the benefit," it is difficult to see how it can be said that the amount received was not a part of petitioner's gross income. The amount received was an amount due under the contract on account of services performed thereunder. The dredging business in which petitioner was engaged

was a business carried on for profit and the amounts received by the petitioner in such business were regularly reported as a part of its gross income. The holdings of the Court of Claims and the Supreme Court negative the conclusion that this judgment was anything other than a payment to be made of the same kind and character as that which was paid from 1913 to 1916 on the unit basis provided in the contract. On the theory on which the judgment was given, the petitioner should have been paid more in the years when it was rendering the services than it was paid. Certainly, if these payments had then been made no one would seriously contend that the amounts so received were not to be considered as a part of petitioner's gross income. Under such circumstances, the petitioner would have been taxed on the difference between such gross income and the allowable statutory deductions and credits. Does the fact that the petitioner did not receive the entire amount of compensation under the contract until 1920, and that when received, it was merely in an amount equal to the expenditures which were made under the contract, change its character and make of it something other than income? We think not. There is nothing in either the decision by the Court of Claims or the Supreme Court to indicate that the judgment was other than compensation for work performed, and certainly under the statute and the judicial determinations made, compensation for the work here in question constitutes income. That it was measured by the expenditures made, does not change its character. Nor do we understand that the judgment was a reimbursement for the expenditures made in the sense that the Government was obligated to make such reimbursement under the contract. The petitioner made expenditures under the contract that were allowable deductions from gross income and they were so deducted and allowed in the returns for the years from 1913 to 1916, inclusive. Apparently the petitioner had income from sources other than this contract against which the expenses that measure the amount of this judgment were applied. But the judgment does not cancel these deductions; they were deductible on their own account when made and are in no sense changed by the fact that a judgment is awarded in the petitioner's favor as compensation for work which is equal in amount to the expenditures. The expenditures are deductions from gross income to the extent provided under the statute and the compensation is a part of gross income that must be accounted for in accordance with an entirely separate statutory provision.

We think the case of *Bowers v. Kerbaugh-Empire Co.*, 271 U. S. 170, to which our attention is directed by the petitioner, is not in point. There the court was dealing with the liquidation of a liability for a smaller sum in dollars than the face amount of such liability,

something which at best might be denominated negative income, whereas this proceeding deals with the receipt of money for work done, positive income.

This brings us to the second phase of the question, i. e., When is the income represented by the judgment to be reported for tax purposes? The Commissioner treated the entire amount as income in 1920, when the Supreme Court affirmed the judgment of the Court of Claims, and the judgment was paid, whereas the petitioner contends that the amount should be allocated to the years 1913 to 1916, inclusive, on the basis that expenditures made exceeded the amounts received in those years. The record does not disclose whether the petitioner was on a cash or accrual basis, but regardless of the method used, the Board is of the opinion that the judgment could not be properly reported as income prior to 1920. On the cash basis, it would, of course, be includable in gross income only for 1920, since it was then paid. With respect to the accrual basis, we find that under the Revenue Act of 1913 income to be reported is that *received* during the year for which a return is being rendered as distinguished from the later acts where both the cash and accrual bases are recognized. *Maryland Casualty Co.* v. *United States*, 251 U. S. 342. But even the accrual basis would not aid the petitioner for any of the years for which it desires to have the judgment allocated, for the reason that the conditions precedent to the accrual of this income did not then exist. In *United States* v. *Yale & Towne Mfg. Co.*, 269 U. S. 422, the court, in passing on the question when a tax accrues, said that a tax will accrue, when all events have occurred " which fix the amount of tax and determine the liability of the taxpayer to pay it." The same general principles are applicable whether we are determining the accrual of taxes or the accrual of items of income or expense. In this proceeding it could not have been said at the end of 1916 that there had been any determination of liability on the part of the Government to pay the compensation in question. There was not only a denial at this time of liability on the part of the Government for the payment of any of the amount which was eventually recovered, but also the fixing of the liability was not accomplished until appeal was had to the Supreme Court. As evidence of the fact that doubt existed as to the existence of an obligation on the part of the Government to pay, we find that when the decision was rendered by the Court of Claims, the decision was accompanied by a strong dissenting opinion on the part of the Chief Justice of that court and likewise the decision of the Supreme Court was dissented from by the Chief Justice and an Associate Justice. In such circumstances, we fail to see how any basis for an accrual of this compensation could be said to exist at any time prior to the decision by the Supreme Court.

The argument of the petitioner that the compensation should be placed in the years when the expenditures were made might, if accepted, afford a more equitable solution to the question here presented, but the Board is of the opinion that no statutory authority exists for such action. While the case of *Bowers* v. *Kerbaugh-Empire Co.*, *supra*, lends some color to the theory that we may look at a longer period than one year for the purpose of determining whether, in fact, a gain was realized or loss sustained in a given transaction, yet, for reasons already stated, we are of the opinion that an entirely different situation was there presented than in this proceeding. Under our system of Federal taxation, an accounting period of one year has been prescribed as the basis for reporting income for tax purposes, and each taxable period stands alone with items of income and deductions determined in the light of events and circumstances transpiring within that year. Here expenditures were made in the years 1913 to 1916 that were taken and allowed as proper deductions in those years, and the income in question was neither received in these years, nor did a basis exist on which to account for it until 1920. We could no more transfer the income from 1920 to the earlier years for the purpose of taxing it, than we could transfer the expenses to 1920 for the purpose of there allowing them as deductions. Furthermore, the years 1913 to 1916, inclusive, are not on appeal to the Board, and the Board accordingly can not make a determination of tax liability with respect thereto.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

TRUSSELL, dissenting: The record in this case establishes that during the years 1913, 1914, 1915, and 1916, the petitioner was engaged in a dredging enterprise for the United States, and that during those years it disbursed moneys necessary to carry on the dredging work and received other moneys in part compensation for such work; that during the four years named the petitioner disbursed $176,271.88 more than it received and thereby sustained an actual money loss of the said amount of $176,271.88. Thereafter, as a result of litigation prosecuted through the Court of Claims and the United States Supreme Court, petitioner recovered the amount of money disbursed in excess of the amount received, together with interest in the amount of $16,305.71, which was paid to the petitioner in the year 1920.

If the Government had paid to the petitioner the amount of the judgment, $176,271.88, during the years in which the work was done, the petitioner's accounts for this dredging work would have exactly balanced as to receipts and disbursements and it would have had no gain and no loss as the result of the enterprise. The amount

of the judgment recovered in 1920, exclusive of the interest was, to use the language of the United States Supreme Court in *United States* v. *Atlantic Dredging Co.*, 253 U. S. 12, "compensatory of the cost of the work of which the Government got the benefit."

The Revenue Act of 1918 levies income and profits taxes upon "gains or profits and income derived from any source whatever," and in *Eisner* v. *Macomber*, 252 U. S. 189, the Supreme Court defines income to be "the gain derived from capital, from labor, or from both combined." Gains, profits and income are not produced by the judgment of a court but must be derived from the use of capital or labor, or both combined, in the circumstances, and conditions which form the basis of the litigation resulting in the judgment. The facts in the instant case show conclusively that, excluding the item of interest, the use of the petitioner's capital and its employment of labor in the dredging enterprise produced no gains or profits.

While it is clearly established that during the years 1913 to 1916, inclusive, the petitioner sustained money losses in respect to this dredging enterprise aggregating $176,271.88, it may be true that in making the petitioner's income-tax returns for those years it recouped some small portion of such losses by reducing the amount of its income-tax liability for those years by using these losses as deductions. If such be the fact, and that can be clearly ascertained by an examination of petitioner's income-tax returns for those years, the amounts by which petitioner's tax liability for those years was reduced can now be determined and such amounts may be properly found to fall within the definition of income in the year 1920, when it was finally compensated for the losses sustained in the earlier years.

I am, therefore, of the opinion that in determining petitioner's gross income for the year 1920 there should be added to the amount originally reported the $16,305.71 of interest received in 1920, together with the amounts by which its income taxes for the years 1913 to 1916, inclusive, were reduced by the use of the dredging enterprise losses as deductions from gross income for those years.

SMITH concurs in the above dissent.

PHILLIPS, dissenting: I concur in the opinion expressed in the first three paragraphs of the dissenting opinion prepared by my associate but can go no further with him. It is my opinion that the judgment of the court in 1920 established that the expenditures made in prior years in excess of receipts were not in fact losses, but moneys expended for the benefit of the United States, the expenditure of which gave rise to an action to recover the amount. If this be so, there was no loss in the years 1913 to 1916 and no income in 1920 when the amounts due petitioner were recovered by it.