*466 OPINION.
Milliken :
It is clear that since petitioner contributed nothing to the Chicago corporation except his services, all he got out of that corporation was gain. It is conceded that he made taxable gain to the extent of $25,000, the amount of cash and notes received by him from Ames. The sole question is, Was he in receipt of $50,000 additional taxable gain by reason of the fact that Ames had paid through him to the Publishing Company the amount of $50,000, which was released by Ames to that company in the agreement of June 9, 1921.
The first agreement between Ames and petitioner was that Ames was to pay into the Publishing Company approximately $50,000, in-return for which he was to receive one-half of the capital stock of that company. No part of this amount was to be paid to petitioner or to his wife or daughter. The whole of it was to go into the corporation. This being true, it is immaterial from a tax standpoint that petitioner was to make up the difference between the unissued stock and the number of shares sold.
Next, it is to be observed that Ames raised the money on which the drafts of the Publishing Company were j>aid. With respect to this phase of the transaction the parties have stipulated: “In order to enable Ames to raise the money thus advanced by him to the California paper, the taxpayer gave to Ames his promissory ninety-day notes in the amount of the sums so advanced and took notes of the company for similar amounts.” In the light of this stipulation, it at once becomes apparent that the only part petitioner played in raising this money was to give Ames his accommodation notes for the purpose of having them discounted. When these notes were paid at maturity by Ames they became worthless, since neither Ames nor any purchaser of them after maturity could have enforced them. The transaction was precisely the same as though no such notes had been given and as though Ames had paid each draft with cash. These facts also remove from the picture the notes which petitioner took for his protection from the Publishing Company. Since Ames paid the drafts and since petitioner neither paid them nor was liable to Ames by reason of their payment, there was no consideration for petitioner’s notes as between him and the Publishing Company. This was a good defense as between the parties to the notes, and since they never came into the hands of a purchaser for value and without notice, they too were worthless.
*467 Under the agreement of June 9, 1921, Ames delivered the notes upon which he had raised the money not to petitioner, but to the Publishing Company. This amounted to a release by him to the corporation of its obligation to him. This obligation was to issue him 50 per cent of its stock. That all this resulted in a benefit to petitioner is more than probably true, but benefits do not necessarily result in taxable gain. Cf. Bowers v. Kerbaugh-Empire Co., 271 U. S. 170. The sole benefit petitioner received was that the corporation, of which he was the principal stockholder, had increased its assets by the amount of $50,000. This may have increased the value of his stock but increase in the value of stock is not taxable gain until the stock has been sold or transferred. Petitioner’s stock constituted a capital investment and any increase in its value accrued to capital and was not during the year in question severed therefrom. See Eisner v. Macomber, 252 U. S. 189. Whatever may have been the benefit, if any, which petitioner may have received from the release to the corporation, we are clearly of the opinion that he did not during the taxable year in question realize from such release any taxable gain.

Judgment will be entered wider Bule 50.