COASTWISE TRANSPORTATION CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39916.   Promulgated July 21, 1933.

*Harris H. Gilman, Esq.,* for the petitioner.
*W. R. Lansford, Esq.,* for the respondent.

OPINION.

Matthews: The Circuit Court, in reversing the former decision of this Board, stated:

\*          \*          \*          \*          \*          \*          \*

From the record in this case and the findings of fact by the Board, and in accordance with its recent practice since the decision in the *Kirby Lumber Co.* case, it is clear, we think, the Board should have sustained the ruling of the Commissioner.

It is urged by the taxpayer, however, that there was no release of free assets by the transactions involved in this case; that the petitioner lost a large sum of money in 1924, the inference being that its assets had thereby been depreciated; and it is further urged that the substitution of bonds of the face value of $375,000 for serial notes of the face value of $456,300 was in the nature of a reorganization of the taxpayer. But the stipulated facts and the findings of the Board do not sustain this. What the petitioner could have shown in this respect we do not know. Under the Board's practice prior to the decision of the Supreme Court in the *Kirby Lumber Co.* case, it was not necessary to stipulate or determine such facts.

Upon the record before this court and the facts agreed upon, we think the case is controlled by the *Kirby Lumber Co.* case, and the decision of the Board of Tax Appeals must be reversed and the case remanded to the Board for a new hearing on the facts and such further proceedings as are not inconsistent with this opinion.

The question now before us is whether, upon the facts disclosed upon the new hearing, the rule of the *Kirby Lumber Co.* case applies.

The reorganization issue was not argued at our original hearing of the case, nor is it raised before us now. Since the facts do not suggest, even remotely, a reorganization of petitioner, it is not necessary to consider this question.

In addition to the other points urged before the Circuit Court, counsel for the petitioner contends (1) that the decision of the Supreme Court in *United States* v. *Kirby Lumber Co.* applied to a situation totally different from that existing in this case; (2) that the settlement of a balance due upon the purchase price of property for an amount less than the original agreed price, does not constitute income to the purchaser; (3) that petitioner did not purchase its own bonds in 1924 and 1925, but merely paid part of the agreed purchase price for a fleet of vessels, in full settlement of the original price thereof; (4) that the entire transaction through December 31, 1924, resulted in a loss, and even if the transaction dealt with the purchase of securities, it is within the exception of the rule in the *Kirby* case and comes within the decision in *Bowers* v. *Kerbaugh Empire Co.*, 271 U.S. 170.

On the first point, counsel for petitioner argues that the *Kirby* case and the article of the regulations which it approves, refer to cases where a corporation sells its bonds or notes as commodities, receiving money therefor, and then repurchases them for less than the price at which sold. He points out that the decisions of this Board rendered since the *Kirby* decision and following it, which were cited by the first circuit in its decision in this case, all relate to cases where the corporation had issued its bonds for money and retired them for less than the issuing price.

We agree with petitioner that the transactions merely amounted to a reduction in the purchase price of the fleet of vessels, that there was no release of free assets by the transactions involved, and that the operation in 1924 resulted in a loss.

Under the agreement of October 1924, the seller agreed to accept $450,000, payable in cash on or before November 15, 1924, in settlement of the outstanding notes amounting to $608,400. The money was paid, petitioner contributing $75,000 cash (which it had to borrow), and the syndicate (made up of petitioner's stockholders) contributing the balance. The syndicate obtained all the purchase money notes outstanding and immediately canceled and turned over to petitioner the two notes due in 1925 and 1926. Shortly thereafter, upon the issuance of bonds in the amount of $375,000, the balance of the notes were canceled and delivered to petitioner. As we view the transactions, the payment of the $75,000 in November 1924, and

the issuance of bonds in the amount of $375,000 in January 1925, which were dated and bore interest from November 15, 1924, were nothing more than steps in the settlement of the balance of the purchase price for $450,000. Petitioner's financial condition was such that it could not have paid the cash in November 1924. By the method followed, however, petitioner was able to obtain the benefit of the reduction in purchase price. This benefit, while reducing petitioner's liabilities, was not sufficient to wipe out the deficit. It did not, therefore, release any free assets.

The petitioner had a deficit at the close of 1923 of over $73,000. Its operating loss for 1924 was over $100,000. The deficit at the end of 1924, taking into consideration the reduction in the mortgage payable that year of $77,100, was $113,883.31. If it had not been for the cancellation of the two notes in the amount of $152,100 by payment of $75,000, thus reducing liabilities by $77,100, the deficit at the end of 1924 would have been $190,983.31. And applying the $81,300 by which the liabilities were further reduced on January 19, 1925, to the deficit of $113,883.31 as of December 31, 1924, there would still remain a deficit of $32,583.31. It is not likely that the operation of the corporation the first part of January was sufficiently profitable to have wiped out the 1924 deficit. Furthermore, the vessels had suffered depreciation to December 1924, on the basis of the original purchase price, in an amount in excess of the reduction in price. And even if depreciation at the same rate were computed on the reduced cost price, the difference would not be sufficient to wipe out the deficit.

In the *Kirby Lumber Co.* case, the taxpayer issued its own bonds for which it received their par value. Later, in the same year, it purchased in the open market some of the same bonds at less than par, the difference of price being held a taxable gain in the year of purchase. The court approved the regulations covering such a situation. In distinguishing the *Kerbaugh* case, Holmes, J., said:

\* \* \* At the time of payment the marks had fallen in value, which so far as it went was a gain for the defendant in error, and it was contended by the plaintiff in error that the gain was taxable income. But the transaction as a whole was a loss, and the contention was denied. Here there was no shrinkage of assets and the taxpayer made a clear gain. As a result of its dealings it made available $137,521.30 assets previously offset by the obligation of bonds now extinct. We see nothing to be gained by the discussion of judicial definitions. The defendant in error has realized within the year an accession to income, if we take words in their plain popular meaning, as they should be taken here. *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359, 364.

Here, the transaction as a whole—the purchase and operation of the ships—was a loss. There was a shrinkage in assets. The reduction in purchase price in the instant case did not make available

to petitioner $158,400 of assets offset by the notes retired. It merely reduced the liabilities and thereby diminished the loss.

Since the decision by the Circuit Court in this case, a similar question has been passed on by the Second Circuit in *Commissioner* v. *American Chicle Co.*, 65 Fed. (2d) 454. In that case the taxpayer had bought all of the assets of another company and assumed its debts; these included an issue of bonds which provided for an annual amortization by purchase in the market. In the years 1924 and 1925 the taxpayer, in accordance with its obligations, bought a number of these bonds for less than their face and so retired them. The Commissioner charged the corporation with income—the difference between the face of the bonds and the amounts at which they were bought. The taxpayer appealed and the Board sustained the petitioner. On appeal by the Commissioner, the court held that the question depended on the scope of the decision of the Supreme Court in *Kirby Lumber Co.* After referring to the decision of the First Circuit in the instant case, and the regulations, the court said:

We can see no difference between bonds retired in the same year and later; nor between those issued in payment for property, and an existing mortgage assumed by the buyer when the property is transferred. But the distinction does seem to us critical between obligations whose consideration is money, and those issued or assumed for property which the obligor still holds. Every increase in the value of property might indeed be treated as a " gain ", though that would involve appraising taxpayers' property each year; but such is not the notion underlying our system of taxation. The gain must be "realized ", either by sale of the property for money, or by its exchange for something else. Section 395, Title 26, U.S. Code. When a taxpayer gets money by issuing an obligation which he later discharges for less than its face, the transaction is completed, because money need not be sold or exchanged to be "realized." So we read *U.S.* v. *Kirby Lumber Co.*, *supra* (284 U.S. 1). But if he buys property by an obligation in the form of a bond, note, or the like, and if it remains in kind after the debt is paid, there can be no "gain." The cost has indeed been definitely settled, but that is only one term of the equation; as long as the other remains at large there is no "realized " gain.

Here the notes were given in purchase of a fleet of ships, property. The unpaid notes were settled for $158,400 less than their face. Under the *American Chicle* decision, cost alone has been established. No income was realized.

By remanding this case for a new hearing, to determine from the facts whether there was a release of free assets by the transactions involved and whether the assets had been depreciated by the loss in 1924, we take the First Circuit's view to be that, if there was no release of free assets and if the assets had depreciated, no income was realized from the transaction. Under either the view of the

First Circuit or that of the Second Circuit in the *American Chicle* case, petitioner realized no gain in the transactions either in 1924 or 1925.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

ARUNDELL and BLACK concur in the result.