*Decision will be entered under Rule 50.*

---

ESTATE OF JOHN Q. SHERMAN, DECEASED, KATHERINE M. SHERMAN, EXECUTRIX, WILLIAM C. SHERMAN AND WELLMORE B. TURNER, EXECUTORS, and MRS. KATHERINE M. SHERMAN, SURVIVING WIFE, PHILADELPHIA ROAD, R. R. #1, DAYTON, OHIO, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103041. Promulgated July 3, 1941.

*W. B. Turner, Esq.*, and *G. H. Wells, Esq.*, for the petitioners.
*Paul A. Sebastian, Esq.*, for the respondent.

854.

856

OPINION.

DISNEY: The petitioners contend that the settlement did not contemplate the use of the certificates of claim in the settlement at any amount other than the price paid for them and that, so far as they are concerned, the situation is the same as it would have been if they had increased the cash payment from $64,465.92 to the compromise figure, $110,894.35, leaving to the bank the question of how to use the additional money. Under this theory they argue that not more than $46,428.43 was received for the certificates of claim and, as this amount is equal to cost, there was no gain to be taxed. The proof here is that the certificates had a cost basis of $46,194.80. The respondent asks us to view the case as one in which there was a satisfaction of indebtedness of a solvent taxpayer for less than the amount due, resulting in taxable gain within the principle of *United States v. Kirby Lumber Co.*, 284 U. S. 1.

In the *Kirby* case there was a purchase by the taxpayer of its own bonds at less than the selling price, in a previous year. No other property was involved. In *Helvering v. American Chicle Co.*, 291 U. S. 426, the liabilities of a corporation, including outstanding bonds, were assumed in connection with the purchase of its assets and later the taxpayer purchased blocks of bonds for amounts less than their

face value. The record did not disclose the disposition made of the assets acquired. Under the circumstances, the difference between the par value of the bonds and the amounts for which they were taken up was held to be taxable gain, following the doctrine announced in the *Kirby* case. In each proceeding the court distinguished *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, upon the ground that therein the transaction as a whole showed loss, not gain.

The transaction here involved more than a mere purchase of a debt for less than its face amount or a voluntary forgiveness of indebtedness. The petitioners' decedent actively contested the legal right of the mortgagor to payment of the face amount of the mortgage, alleging, in general, misrepresentations in connection with the sale of the property to him. Nothing indicates to us a lack of good faith in the defenses set up in the litigation. Negotiations ended in a settlement of the controversy by a payment of less than the principal of the mortgage. It is not clear whether both parties understood the reduction of the mortgage debt to be a forgiveness of indebtedness or an adjustment of the selling price. The decedent's offer of settlement discloses an intent to regard the adjustment as a decrease in the selling price of the property, for he recited that he would carry the property on his books at $135,894.35. The original selling price of the property was $200,000. The application of the superintendent of banks to the court for approval of the settlement treated the matter as a compromise of the suit to enforce payment of the principal and interest due under the mortgage, although he accepted the proposition of the decedent as made. Irrespective of whether there was a meeting of the minds on the question, the transaction enabled petitioners' decedent to acquire unencumbered title to the property for a price less than the amount originally agreed upon. The mortgagee, by accepting as part payment certificates of claim worth 55 percent of face value, recognized it was receiving a reduction upon the original price for the property. There was not forgiveness of debt nor bargain payment of admitted obligation, but compromise of the question whether there was debt. The final payment of cash and certificates of claim completed the transaction and, viewing it as a whole, there was no gain, since the property at that time was worth less than the unpaid amount of the mortgage. The effect of the whole transaction was a reduction in the purchase price of the property.

In *L. D. Coddon & Bros. Inc.*, 37 B. T. A. 393, a case relied upon by respondent, the property had a value at the time of settlement in excess of the mortgage indebtedness. A like situation prevailed in *Commissioner* v. *Coastwise Transportation Corporation*, 71 Fed. (2d) 104.

In *Kalman Hirsch*, 41 B. T. A. 890, the petitioner purchased a piece of real estate for $29,000, of which he paid $10,000 in cash and assumed mortgages outstanding on the property in the aggregate amount of $19,000. Payments prior to the maturity of a new mortgage placed against the property reduced the indebtedness to $15,000. Upon maturity of the mortgage the mortgagee demanded payment and the mortgagor refused. In subsequent negotiations the mortgagor offered to reconvey the property in satisfaction of the indebtedness. The mortgagee refused, but later, when the property had a value of $8,000, or $7,000 less than the mortgage indebtedness, accepted $8,000 in discharge of the debt. The mortgagor was personally liable for the debt and was solvent before and after the settlement. We sustained the action of the Commissioner in determining that the mortgagor realized taxable income of $7,000 in the settlement, upon the theory of the *Kirby* case, i. e., that the petitioner was relieved of a liability of $7,000, and until the property was disposed of it could not be ascertained whether the transaction as a whole would be a loss as in *Bowers* v. *Kerbaugh-Empire Co.*, *supra*. Upon appeal the decision was reversed. *Hirsch* v. *Commissioner*, 115 Fed. (2d) 656. The reasoning of the court was, in general, that there was in essence a reduction of purchase price, and, the property having decreased in value, nothing of value moved to the mortgagor in the settlement, since the reduction of indebtedness merely decreased the loss in a capital investment; that the reduction operated as a credit upon cost, thereby to that extent reducing the purchase price; and that until the property is finally disposed of there is no way of determining whether the transaction as a whole will result in gain or in loss.

The situation here is in most material respects parallel with that in the *Hirsch* case, with here the additional fact of litigation as to whether there was actually any indebtedness owing by the petitioner. Such litigation rendered incomplete the matter of purchase and payment for real estate, because of the defenses, including fraud, set up. By the settlement of such litigation the parties thereto in effect agreed upon the actual amount of indebtedness and an actual purchase price, as the court holds in the *Hirsch* case. Until that time the whole matter was unfinished. At the time of completion of the settlement the property acquired was worth less than the amount paid, in part in cash, in part by certificates of claim. What the petitioner paid was in substance a reduced purchase price. On the whole transaction, purchase, execution of note and mortgage, and litigation and settlement, through which the property, free from encumbrance, was acquired, no profit was made. Following the decision of the court in the *Hirsch* case, we conclude and hold that no taxable income resulted for the petitioner.

*Decision will be entered under Rule 50.*