UNITED STATES of America,
Appellant,

v.

G. E. HALL and Christine B. Hall,
Appellees.

G. E. HALL and Christine B. Hall,
Cross-Appellants,

v.

UNITED STATES of America,
Cross-Appellee.

Nos. 6835, 6836.

United States Court of Appeals
Tenth Circuit.

July 27, 1962.

Michael A. Mulroney, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen.,

Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, and B. Andrew Potter, U. S. Atty., on the brief), for appellant and cross-appellee.

Gus Rinehart, Oklahoma City, Okl. (Butler, Rinehart & Morrison, Oklahoma City, Okl., on the brief), for appellees and cross-appellants.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This case explores the personal income tax incidents that occur when a gambling debt is eliminated as between winner and loser by transfer from the loser to the winner of property having a value less than the amount of the debt. The general problem is further complicated by certain refinements appearing in the factual background. The suit arose in the United States District Court for the Western District of Oklahoma as a claim for refund of income taxes for the year 1950 and resulted in a judgment favoring the taxpayer Hall [1] in the amount of $54,220.32. The judgment included a set-off against the claim of taxpayer for $1,014.74.

Both the government and the taxpayer have appealed. The government contends that the judgment is erroneously based in law upon a finding of fact made by the jury that the taxpayer and the winner, one Binion, had agreed upon the amount of the gambling debt as being $150,000. The taxpayer by cross-appeal asserts error in the allowance of a set-off based upon a determination of income resulting from the elimination of the $150,000 debt by the transfer by taxpayer to Binion of cattle having a base worth of $148,110.

In 1947, the taxpayer Hall incurred through the medium of dice and race bets a substantial gambling debt at the Las Vegas Club in Las Vegas, Nevada.[2] The exact amount of the debt was not determined at the trial and the rather sketchy evidence touching the amount mentioned varying sums from a high of $478,000 to a low of $145,000. Binion, a member of the syndicate who owned and operated the Las Vegas Club, had apparently vouched for taxpayer's credit and took over the debt by paying into Las Vegas Club dice and bet pools a sum indicated to be $225,000 in cash.[3] Taxpayer, in addition to other substantial business interests, owned a cattle ranch in Arizona. Binion, in addition to his professional gambling interests, owned a cattle ranch in Montana. Taxpayer ran his own cattle upon both ranches in 1948 and 1949 and in 1950 transferred to Binion a one-half interest in both herds in complete satisfaction of the entire gambling debt. The jury found that prior to the transfer taxpayer and Binion orally agreed that the amount of the gambling debt was $150,000 and that the transfer intended to, and did, create a bona fide partnership.

In 1950 some of the cattle were sold and taxpayer reported one-half the gain

1. Mrs. Hall appears as a party only because of a joint income tax return.

2. Licensed gambling is legal in Nevada. A gambling debt is nevertheless unenforceable. West Indies Inc. v. First Nat'l Bank of Nevada, 67 Nev. 13, 214 P.2d 144.

3. Binion's testimony as a witness was in main a repetition of "I don't remember." But the record does show the following:
"Q. Well, do you remember making a settlement on Hall's debt with the other partners in the club? A. Yes.
"Q. You do remember that? A. Yes.
"Q. Do you remember whether your settlement was more, or less than face amount of the debt? A. Well, if I settled it, it would have been less.
"Q. Well, is it your testimony it was less? A. Less.
"Q. Well, do you remember paying in the club $150,000 into the, I believe, the crap table part of it and $75,000 into the horse book part of the debt? A. I don't remember how much.
"Q. Was it in that neighborhood? A. Somewhere in that neighborhood."
The witness's memory may have been dulled by a penitentiary term served as the result of income tax troubles of his own which were totally unrelated to the case at bar.

derived from such sales as income. The Commissioner included the entire amount of gain on the cattle sold in taxpayer's income for that year. This suit for refund resulted.

The government's present position[4] is that taxpayer realized gain or income in an amount equal to the difference between his basis in one-half the herd and the portion of the debt discharged or canceled by the transfer of the cattle to Binion. Since the judgment below fully recognizes a gain to the taxpayer by the elimination of his gambling debt through the transfer of cattle to Binion, the government's claim of error is limited to complaint as to the determination of the amount of the debt to which the theory is applied. The trial court used the sum of $150,000, the amount found by the jury to be the figure *agreed* upon by taxpayer and Binion as representing the debt due. The government contends that the *actual* amount of the gambling debt is the proper base of the debt. The taxpayer by cross-appeal urges error in the judgment to the extent a set-off was allowed for taxable gain realized by the elimination of an agreed gambling debt of $150,000 through transfer of property

having a base worth of $148,110. Says the taxpayer: "I have gambled away $148,110 worth of my property. I have a non-deductible loss to that extent. It is patently impossible to have a gain by suffering such a loss."

■ In broad approach, the general statutory,[5] regulatory[6] and interpretive[7] rules applicable to ordinary business transactions give comfort to the government's present position. An actual enrichment resulting to a solvent debtor by reduction or cancellation of an undisputed claim of indebtedness carries with it an incident of taxable gain. See 2 Mertens Law of Federal Income Taxation, sec. 11.-19 to 11.30.

■■ And we are in accord with the government's contention that the impact of the tax laws cannot be varied by the arbitrary agreement of taxpayers as to the existence of a fact. The amount of taxpayer's gambling credit loss here, if it has significance for tax purposes, cannot be conclusively determined by the agreement of the parties.[8] Such agreement would be, of course, competent evidence of the debt but would not be a bar to other evidence upon the subject. The amount of such debt is a fact capable of

---

4. The original assessment was based upon the premise that no partnership existed between taxpayer and Binion. The jury found that such a partnership did exist. The claim of realization of taxable income on the transfer of cattle from taxpayer to Binion by reason of cancellation of indebtedness was first raised by amended answer to taxpayer's complaint seeking refund. At such time the statute of limitations contained in Sec. 275 of the 1939 Code, 26 U.S.C.A. § 275 had run and was a bar to a deficiency assessment based upon such theory.

5  26 U.S.C.A. § 111, provides:
  "Determination of amount of, and recognition of, gain or loss
  "(a) *Computation of gain or loss.* The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized."

6. Treasury Regulations 118 (1939 Code):
  "Sec. 39.22(a)–13 *Cancellation of indebtedness*—(a) *In General.*—The cancellation of indebtedness, in whole or in part may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income in the amount of the debt is realized by the debtor as compensation for his services. A taxpayer realizes income by the payment or purchase of his obligations at less than their face value * * * *"

7. The discharge of corporate indebtedness for less than its face value (corporate bonds) was held to result in income. United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131.

8. This court has held that a creditor cannot voluntarily cancel a debt having value and then claim a deduction because the debt by such act becomes valueless. Liggett's Estate v. Commissioner, 10 Cir., 216 F.2d 548.

proof as any other fact. It follows that the judgment below, based as it is upon a finding of fact that the amount of the gambling debt was agreed by the parties to such debt to be $150,000, is faulty.

It does not follow that a judgment based upon the *actual* amount of the gambling debt is proper. The general rules relied upon by the government as having application to gain realized from cancellation of debt, sound as such rules may be in the ordinary course of business affairs, are but artificial theory when applied to the facts of the case at bar. The tax statutes are practical, not pure theory, United States v. General Shoe Corp., 6 Cir., 282 F.2d 9, 12, and the revenue needs of the nation are not dependent upon artifice in the determination of income.

Congress has recognized that gain and loss from gambling requires special treatment within the tax structure and has provided that gain shall be treated as income and that loss can be used only as an offset against gain in the same year. 26 U.S.C.A. §§ 22, 23(h). A gambling loss is a hard reality but a gambling debt,[9] being unenforceable in every state, has but slight potential and does not meet the requirements of debt necessary to justify the mechanical operation of general rules of tax law relating to cancellation of debt. It is only by the operation of the most artificial of standards that a gain based upon cancellation of debt can be created from the transaction consummated by the transfer of cattle from taxpayer to Binion. The cold fact is that taxpayer suffered a substantial loss from gambling, the amount of which was determined by the transfer.

█ Courts need not apply mechanical standards which smother the reality of a particular transaction. Bowers v. Kerbaugh-Empire Co., 271 U.S. 170, 46 S.Ct. 449, 70 L.Ed. 886. The Sixth Circuit in a recent case remarkably similar in principle to the case at bar had occasion to consider the Kerbaugh-Empire Co. case and subsequent authorities and concluded, as do we, that the film of technicality should not be allowed to support a colorable profit. In Bradford v. Commissioner, 6 Cir., 233 F.2d 935, Judge Stewart, now Mr. Justice Stewart, stated:

"The fact is that by any realistic standard the petitioner never realized any income at all from the transaction in issue. In 1938 'without receiving any consideration in return,' she promised to pay a prior debt of her husband's. In a later year she paid part of that debt for less than its face value. Had she paid $50,000 in 1938 to discharge $100,000 of her husband's indebtedness, the Commissioner could hardly contend that she thereby realized income. Yet the net effect of what she did do was precisely the same. We cannot agree that the transaction resulted in taxable income to her.

"The conclusion we have reached is not without authority to support it. In Bowers v. Kerbaugh-Empire Co., 1926, 271 U.S. 170, 46 S.Ct. 449, 451, 70 L.Ed. 886, the corporate taxpayer had borrowed money from a bank in Germany repayable in marks. The marks were immediately converted into dollars, and the money was lost in the performance of construction contracts by a subsidiary company over a period of years. In a subsequent year, the taxpayer repaid the loan with greatly devalued marks. The question for

---

9. It is interesting to note that the government now argues that a gambling debt is a true debt supported by consideration. In the court below the government requested but was refused the following instruction:

"I charge you that the alleged indebtedness to Binion which the evidence shows was for gambling losses incurred in Las Vegas, Nevada, was void, illegal and unenforceable anywhere in the United States. As a result, if you find that any interest in cattle was transferred to Binion by Hall in exchange for this alleged gambling indebtedness, then you must find that such cattle or interest therein was transferred to Binion in exchange for no consideration whatsoever from Binion."

decision was 'Whether the difference between the value of marks measured by dollars at the time of payment * * * and the value when the loans were made was income.' The Court decided that it was not, saying that 'The loss was less than it would have been if marks had not declined in value; but the diminution of loss is not gain, profit, or income.' 271 U.S. 170, at page 175, 46 S.Ct. 449, at page 451.

"The Kerbaugh-Empire Co. case was decided before the Kirby Lumber Co. and Sanford & Brooks Co. decisions [Burnet v. Sanford & Brooks Co., 1931, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383]. The case has been called 'a frequently criticized and not easily understood decision.' See Willard Helburn, Inc. v. Commissioner, 1 Cir., 1954, 214 F.2d 815, 819. It is nonetheless a decision which has not been overruled. Whatever validity the Kerbaugh-Empire Co. decision may now have on its own facts, it remains an authority for the proposition that in deciding the income tax effect of cancellation of indebtedness for less than its face amount, a court need not in every case be oblivious to the net effect of the entire transaction. See Dallas Transfer & Terminal Warehouse Co. v. Commissioner, 5 Cir., 1934, 70 F.2d 95, 96; Transylvania R. Co. v. Commissioner, 4 Cir., 1938, 99 F.2d 69, 72."

We conclude that under the circumstances of the case at bar the amount of the gambling debt, agreed or actual, has no significance for tax purposes. It follows that the judgment below is in error to the extent it is so premised and including the allowance of a set-off for capital gain computed from the agreed amount of the debt, $150,000, and taxpayer's basis in the cattle, $148,110.

The elimination of a gambling debt is, however, a transaction that may have tax consequences independent of the *amount* of the debt and certainly cannot be used as a tool to avoid a tax incident which is shielded only by the screen of its unenforceable origin. Here, as the jury found, the taxpayer made a bona fide transfer of his cattle to Binion. The government contends the property was appreciated in value and we consider the issue to be a proper one for determination. Taxpayer's gain, if any there be, should be computed as if he had sold his cattle for cash upon the open market and paid off Binion in money rather than property. This would indicate the necessity of applying taxpayer's basis in the cattle at time of transfer to Binion to the market value of the cattle at such time. The case is remanded to the trial court for such proceedings as may be necessary to determine what, if any, set-off is proper in accord with the views herein expressed. The judgment is otherwise affirmed. Each party shall bear his own costs.