## AMERICAN CAN CO. v. BOWERS, Collector of Internal Revenue, and three other cases.

District Court, S. D. New York. October 26, 1928.

Simpson, Thacher & Bartlett, Graham Sumner, L. A. Welles, and O. L. Johnston, all of New York City, for plaintiffs.

Charles H. Tuttle, U. S. Atty., and Thomas J. Crawford and Edward Feldman, Asst. U. S. Attys., all of New York City, for defendant.

GODDARD, District Judge. These four actions were brought by the American Can Company, a New Jersey corporation, and three of its subsidiaries, Missouri Can Company, American Can Company of Massachusetts, and American Can Company of Utah, to recover amounts which they paid on March 15, 1924, as Federal income and excess profits taxes for the calendar year 1917 with interest from the date of payment. These amounts were paid under protest as a result of additional assessments made in accordance with letters of the Commissioner of Internal Revenue to the plaintiffs, dated March 7, 1921. The amounts claimed by the various plaintiffs are as follows:

American Can Company, $3,874,911.37, with interest at the rate of 6 per cent. per annum from March 15, 1924;

Missouri Can Company, $11,489.53, with interest at the rate of 6 per cent. per annum from March 15, 1924;

American Can Company of Massachusetts, $13,057.83, with interest at the rate of 6 per cent. per annum from March 15, 1924; and

American Can Company of Utah, $3,477.54, with interest at the rate of 6 per cent. per annum from March 15, 1924.

Upon stipulation of counsel the four actions were tried together before a jury of one, and after all the testimony had been presented, both sides moved for the direction of verdicts.

On March 29, 1918, the returns for companies were filed, under section 13(d) of the Revenue Act of 1917, showing a consolidated net income of $17,944,400.46 (including $60,010.50 as dividends). After an audit by the Commissioner of Internal Revenue, their income was increased by $1,283,721.37 so that it amounted to $19,278,121.03, and the tax paid. Later, a reaudit was made by the Commissioner, and as a result he redetermined their income and by his communications to them on March 7, 1921, increased their taxable net income from $19,278,121.03 to $24,949,668.51 (including $60,010.50 as dividends).

The American Can Company and its subsidiaries were manufacturers of cans and other containers made largely from tin plate,

and it was necessary for them to maintain a supply of tin plate so as to fill their orders promptly. In 1916, tin plate cost them $3.60 per base box. Some of this they carried over into 1917, and they received further shipments of it at the rate of $3.60 per base box under previous contracts. In the early part of 1917, the price had risen sharply in price and it sold at $7 per base box, and the plaintiffs charged their customers with the tin plate consumed in the manufacture of their finished product at the current market price of $7 per base box of tin plate at the time of the manufacture, irrespective of the price paid for it, so that upon all of such sales they realized an inventory profit of $3.40 per base box during that year besides their normal manufacturing profit. This profit was not reported as income in their returns, the plaintiffs taking the position that this price of $7 per base box was abnormally high because of war conditions and that when that temporary condition was over, prices would drop sooner or later to a more normal level, and that as tin plate was the basic material for making cans and containers, it was necessary for them to carry large stocks of it to meet promptly the requirements of customers for their manufactured products; and that to value their stock of tin plate at the current high cost or market under such a situation was unsound; and that to avoid risk of overstating their incomes and overvaluing their assets they accordingly established an "inventory constant account" and carried their normal stock of tin plate at a constant figure.

This "inventory constant account" was created by certain journal entries. In the instance of the American Can Company, a journal entry was made on January 31, 1917, debiting an account designated "cost ledger" and crediting an account called "inventory write-up" in the sum of $5,403,906.79. A further journal entry was made on the same date debiting various "finished products" accounts and crediting "inventory write-up" in the sum of $647,572.26. These entries, although made on January 31, 1917, were effective as of January 1, 1917. The effect thereof was to increase the value of the opening inventory, in the case of the first journal entry, of inventory of raw materials and goods in process, and in the case of the second journal entry, of inventory of finished products. Part of this "write-up" to the extent of $4,722,000 was transferred to a reserve account called "inventory constant." This was done by a journal entry debiting the account called "inventory write-up" and crediting the account called "inventory constant" in the sum of $4,722,000. Mr. Green, the treasurer of the American Can Company, testified:

"Our inventories were written up on the 1st of January on the $7.00 basis for tin plate, and our operations were charged at that price right straight through the year, and all of the operations and the accounts on our general ledgers were carried at that figure and the profit and loss and the inventory at the close of the year from a profit and loss standpoint was figured on the same basis. Now that had the effect of decreasing the profits for 1917 to the extent of the constant. * * *

"The tin plate constant account was set up on our books as applying against the inventory. At the close of 1917, when the balance sheet of the company was made, the $4,722,000 was deducted from the inventory as reported on the high basis, and on that basis the difference between the assets and the liabilities of the company, representing the difference in the surplus, agreed with the profit and loss as figured from a profit and loss standpoint. * * *

"Q. So that that was an increase in cost that was not actually sustained by the company, and had the effect of reducing income, did it not? A. It did."

Entries and "write-ups" of like nature were made by the several plaintiff companies, the total amount being $5,671,500. The Commissioner of Internal Revenue ruled that this "inventory constant account" could not be included in the cost of the merchandise sold when deducting the cost from the selling price in computing income, and his reasons in his letter of March 7, 1921, to the American Can Company relative to its item of $4,722,000 are characteristic of those stated to the several plaintiffs respecting similar items in their returns, and are:

"(a) This item represents a charge to costs of raw material put in process over the actual cost at which same was inventoried at December 31, 1916. The credit was placed to 'inventory constant' account. The entry was made in anticipation of a drop in the market at some future date, when a loss would occur on account of high priced inventories at hand.

"For income tax purposes, all income must be returned in the year in which realized and if the market should slump at a future date, the loss would be taken in the year in which realized.

"The entry referred to above would result in an elimination of profits realized

through rise in market values, and therefore, has been disallowed."

It is the taxes which were assessed upon these increases in the respective incomes resulting from the disallowance of this item by the Commissioner, which the plaintiffs now seek to recover after paying it under protest.

The plaintiffs kept their books on an accrual basis of accounting as distinguished from a basis of cash received and disbursed, and filed their returns on such basis for 1917 and all previous years; also 1918. The letters of the Commissioner contain no specific rejection of the returns filed by the plaintiffs or of the accrual basis on which they were made, and the plaintiffs filed no returns for 1917 on the cash basis. The plaintiffs contend that the action of the Commissioner in disallowing this item constituted a rejection of the basis upon which their books were kept and their returns filed, and that consequently he had no power to redetermine their incomes or to assess taxes upon any basis other than the basis of actual receipts and disbursements. The defendant insists that there was no rejection of the basis on which the returns were filed and that the Commissioner merely disallowed an improper deduction. Statements prepared by the plaintiffs and received in evidence during the trial show that their incomes for 1917, on the basis of actual receipts and disbursements, aggregated $13,231,054.52 (including $60,010.50 as dividends).

Although the record contains quite an array of figures, the real question is whether the act of the Commissioner in eliminating the "inventory constant account" is to be regarded as a rejection of the "basis" upon which the plaintiffs filed their returns and upon which their books were kept, thereby entitling them to file returns on a cash basis for the year 1917, with the result that as their returns for 1916 and 1918 were filed on the basis on which their books were kept or an accrual basis, a very substantial amount of income would escape taxation.

The acts of Congress which imposed and determined the amounts of the Federal income and excess profits taxes for 1917 are the Revenue Act approved September 8, 1916 (39 Stat. 756), and the Revenue Act approved October 3, 1917 (40 Stat. 300). These two acts together constitute the Revenue Act of 1917. The Act of October 3, 1917, continued some of the provisions of the Act of September 8, 1916, amended others, and added some new provisions. While the Act of 1917 changed the rates and method of computing taxes, it did not change materially the method of determining the amount of the income, subject to taxes. The Revenue Act of 1917 prescribes the basis of actual receipts and disbursements generally described as the cash basis for determining the amount of income subject to taxes. However, under section 13(d) corporations (section 8(g) similarly applied to individuals) keeping their accounts on a basis other than that of the cash basis were permitted to file their returns on such other basis, provided it truly reflected the income. Section 13(d) reads as follows: "A corporation, joint-stock company, or association, or insurance company, keeping accounts upon any basis other than that of actual receipts and disbursements, unless such other basis does not clearly reflect its income, may, subject to regulations made by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, make its return upon the basis upon which its accounts are kept, in which case the tax shall be computed upon its income as so returned." 39 Stat. 771. The plaintiffs filed their returns under this section.

The tin plate, which cost the plaintiffs $3.60 per base box, was at the end of January, 1917, written up in their inventories as of January 1, 1917, on a valuation of $7 per base box; this difference of $3.40 was carried to their "inventory constant account." The result of this was to inflate the valuation of their tin plate, and although the companies benefited to the extent of $3.40 per base box, it was not accounted for in their return. Reduction of profits may be effected by artificially appreciating an opening inventory or by depreciating a closing inventory. The scheme adopted by plaintiffs might be described as an indirect method of claiming a depreciation to which they were not entitled irrespective of the basis upon which their books were kept or their returns filed. The basic theory upon which the plaintiffs' books were kept was in the nature of an accrual basis, and this was not disturbed by the Commissioner; he merely disallowed as a deduction an item which was shown on their books. Gain derived from the sale of assets is income. Doyle v. Mitchell Bros. Co., 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054; Stratton's Independence v. Howbert, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285.

Plaintiffs concede that the Commissioner has the authority to correct a return filed upon the cash basis, but insist that section 13(d) creates an exception, and that when a return is filed under this section, the return is immune from any adjustment by the

Commissioner and that he must either reject it or accept it as it stands; that he has no authority whatsoever to do anything else.

While it is undoubtedly true that the Commissioner must accept the basis upon which the corporation keeps its books and files its return, or in the alternative require it to file on the cash basis, if it is able to do so, and that he cannot compel it to change its basis other than to a cash basis, I do not agree that he is without power to audit a return and adjust items in accordance with the basis upon which it is filed or disallow improper deductions or to allow proper deductions and credits which it may appear the taxpayer rightfully should have had. The plaintiffs' contention as to the limitation of the Commissioner's power over a return filed under section 13(d), it seems to me, cannot be correct. If it were so, corporations which were unable to file a return on the cash basis—and it is well known that there are many so situated because of the nature of their business and records—might escape paying taxes. For, if the plaintiffs' position is right, such a corporation, when compelled to file under section 13(d) because unable to file on the cash basis, could then file a return under 13(d) which did not reflect its true income and the Commissioner would have to accept it without corrections, as it follows that if the Commissioner has no authority to correct a return filed under section 13(d), he would lack authority to correct a return filed under such circumstances. The Supreme Court, in United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347, held that the commissioner had the authority to correct a return filed by a corporation upon the basis on which it kept its books (section 13(d)) in a case where it was unable to file on the cash basis; therefore, the court must have regarded the Commissioner as having the power to correct returns filed under section 13(d), for certainly there is nothing in the statute which gave the Commissioner authority over that particular return that he did not have in respect to all returns filed under section 13(d). Nowhere in the statute is there found a limitation of his power as to such returns. It seems to me that the reasonable construction of 13(d) wherein it provides that the books and return must reflect income is that the taxable income must be computable from the basis of accounting adopted, not that such a return is immune from adjustments by the Commissioner in accordance with the basis used.

I think that section 13(d) must be read in the light of the other provisions of the Revenue Act, and that the definitions of what is taxable net income under section 12 (a) (39 Stat. 767; 40 Stat. 334) are applicable to all returns, though, of course, all of them may not be applicable to every return. This is the clear inference from the statements of Mr. Justice Sanford on pages 100, 101 (47 S. Ct. 520) of the court's opinion in American National Co. v. United States, 274 U. S. 99, 47 S. Ct. 520, 71 L. Ed. 946. If the definitions of what is taxable net income under section 12(a) are not applicable to all returns, there would be much confusion, and, moreover, it would mean that the Commissioner and not Congress had the power of defining what was the taxable net income of a corporation filing under section 13(d). In United States v. Anderson, supra, page 437 of 269 U. S. (46 S. Ct. 133), Mr. Justice Stone states: "While section 12(a) taken by itself would appear to require the income tax return to be made on the basis of actual receipts and disbursements, it is to be read with section 13(d) which we have quoted and which obviously limits in some respects the operation of section 12(a) by providing in substance that a corporation keeping its books on a basis other than receipts and disbursements, may make its return on that basis provided it is one which reflects income." This would indicate that the exception provided in section 13(d) applied only to the extent of permitting a corporation to file its return on the basis on which its books were kept, but does not exclude the definitions of income defined in section 12(a).

Section 10 levied a tax upon "the total net income received * * * from all sources by every corporation, * * * organized in the United States" (39 Stat. 765; 40 Stat. 333), except those organized and operated exclusively for religious, charitable, educational purposes, and the others expressly exempted under section 11.

Section 12(a) makes no reference to accounts receivable, accounts payable, inventories, for the obvious reason that these are not used when making a return on the cash basis, but it does list the various deductions which were allowed, such as ordinary and necessary expenses, losses, interest on indebtedness, taxes, and the like.

Section 13(a), 39 Stat. 770, which dealt with the filing of returns, provided that "the tax shall be computed upon the net income, as thus ascertained," namely, by deducting from the gross income received from

all sources the various deductions permitted under 12(a).

Section 14(b) provides: "When the assessment shall be made, as provided in this title, the returns, together with any corrections thereof which may have been made by the Commissioner, shall be filed. * * *" 39 Stat. 772.

From the above it would appear that the standard of what is income "from all sources by every corporation" does not change, although the basis of keeping their books and filing their returns may differ; some adopting the method or basis of accounting on cash received and cash disbursed; others using a method or a basis of accruing their receipts and disbursements. Section 13(d) recognized that some corporations found it more practical to keep their books on some other basis than that of cash received and disbursed, and permitted them latitude as to the precise basis which might be used in keeping their books and in filing their return, but it did not grant to them the exceptional power to say what was income and what was not income, as I read the statute. Where a corporation was in a position to do so, it was permitted to elect whether it would file on the cash basis or under 13(d). Having elected, all the items must be accounted for in a manner consistent with such basis, and if the basis adopted does not "clearly reflect its income," the Commissioner may require them to file on the cash basis, if it is possible for them to do so. But if the basis is a fair one, the Commissioner has the authority under the act to make any such corrections in the items as may be necessary to make them conform on the basis adopted by the taxpayer so as to reflect income as defined for corporations.

In United States v. Anderson, supra, the accounts were kept and the return was filed on the basis of accruing all their receipts and disbursements, and they accrued on their books in 1916 their munitions taxes for 1916 which were taxable and paid in 1917. They made their returns for 1916 and 1917 on the basis of their books, except that they deducted their munitions taxes from their income for 1917 instead of 1916. The Supreme Court sustained the ruling of the Commissioner that their munitions taxes should have been deducted from their 1916 income instead of their income for 1917, and his adjustment of their taxes accordingly. The corporations were not able to make their returns on the basis of actual receipts and disbursements, and the court held that as their accounts were kept on a basis which clearly reflected their incomes, they were required to make their returns on the basis of their own books, and that the adjustments made by the Commissioner merely had the effect of making their returns accord with their own books of account. Counsel for plaintiffs rely upon this case as supporting the contention that where a corporation has filed its return on the basis upon which it keeps its books under section 13(d), the Commissioner has no right to amend or correct it, and his only alternative is to require the corporation to file on a cash basis; that only in the event that the corporation is unable to file a return on the cash basis may the Commissioner amend or correct the return. Perhaps the language of Mr. Justice Stone, on pages 437, 438, of 269 U. S. (46 S. Ct. 133), is susceptible of this inference when standing alone, where he discusses the Treasury Decision 2433 and the right of the Commissioner to require the return to be made on the basis of receipts and disbursements if the return failed to reflect income. But it seems a clear conclusion from his entire opinion that the Commissioner has the option of requiring the corporation to file a return on a cash basis if the basis on which the return was filed does not reflect true income. In other words, if the basis upon which the return is filed is not susceptible of properly reflecting income, then the Commissioner may require them to file on the cash basis; but if the accounts are kept and the return filed upon a basis which will reflect income but does not, because of incorrect items, the Commissioner may make such adjustments as to enable him to compute taxable net income in accordance with the corporation's basis or method of accounting. Obviously, the court did not hold the view that the Commissioner had no power to amend or correct a return filed under section 13(d). Plaintiffs' position must be taken, then, that while the Commissioner had the power to audit or correct returns filed under section 13(d), its use was limited to special instances. However, if the power exists at all, and concededly it does, under no logical theory or construction of the statute is there support for the idea that the Commissioner's authority was thus confined. He either had the power over all returns filed under section 13(d), or he had power over none of them. The statute permits no middle ground.

The plaintiffs urge that the effect of the words of section 13(d), "the tax shall be computed upon its income *as so returned,*" was to substitute in a case like the one at

bar for the purpose of computing the tax the income *as returned* by it instead of its income ascertained as prescribed by section 12(a). And, further, that it is the *amount* of the income and not the basis which "as so returned" applies to so that the Commissioner must accept the amount; otherwise. he rejects the basis. I think the words "as so returned" refer to the basis for the reasons discussed above, and again in the Anderson Case, supra, the tax there was not computed on the amount "as returned," but upon the income "as so returned" on their basis after the Commissioner of Internal Revenue had disallowed a deduction claimed in the return.

■ Counsel for plaintiffs also contend that aside from any question with respect to the powers of the Commissioner under the Revenue Act of 1917, Congress had no power under the Sixteenth Amendment of the Federal Constitution to levy taxes upon income which had accrued but was not actually received by the taxpayer, so that regardless of any attempt on the part of Congress to clothe him with this authority, he had no power to redetermine the income of the plaintiffs upon any basis other than the basis of actual receipts and disbursements. This contention seems to me to be answered by a reference to the decision and the opinion in the Anderson Case, supra, where it was pointed out that true income is to be determined by deducting from gross income during the year the total costs and expenses attributable to the production of that income during the year. This is the essence of accrual basis of accounting.

Moreover, in Brushaber v. Union Pac. R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, it was held that it was not the Sixteenth Amendment which conferred upon Congress the general power to impose tax upon income which Congress already had, but that the purpose of the Sixteenth Amendment was to relieve Congress in imposing income taxes in so far as they might be held to be direct taxes from the burden of apportioning such taxes according to population. See also Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

My conclusion is not in accord with Judge Bodine's decision in American Can Co. v. United States (D. C.) 20 F.(2d) 970, but it is consistent with that of Judge Westenhaver in Aluminum Castings Co. v. Routzahn (D. C.) 24 F.(2d) 230, where a corporation had filed its return for 1917 under section 13(d), and the court sustained the right of the Commissioner to correct it so as to properly compute the tax due on the basis upon which the return had been filed by deducting from the 1917 return $150,000 paid for munitions taxes in 1917 but which had accrued in 1916.

Accordingly, the jury is directed to render verdicts in favor of the defendant.