## FALL RIVER ELECTRIC LIGHT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 41468, 43217, 44901.   Promulgated May 13, 1931.

*J. S. Y. Ivins, Esq.*, for the petitioner.

*W. Frank Gibbs, Esq.*, and *O. W. Swecker, Esq.*, for the respondent.

OPINION.

TRAMMELL: The deficiencies here in question were determined by respondent by treating the bond premium as income and including it all in petitioner's gross income for the calendar year 1925, and also by prorating it over the bond period, and including one-twentieth of it in income for each of the calendar years 1926 and 1927. Respondent admits that this action can not be sustained and that the correct deficiency for 1925 is only one-twentieth of the amount determined, or there are no deficiencies for 1926 and 1927, depending upon whether the bond premium represents income for the year in which received or should be prorated over the 20-year bond period either as income or as an adjustment of interest deductions taken.

Respondent advances two distinct theories in support of his action in determining the deficiency for 1925 or for each one of the three years in question. Under the first theory it is contended that the premium does not constitute income at all, but merely an excess of the amount of interest paid over the effective rate or rate of interest at which the bonds would have brought par on the market. In other words, the respondent contends that the bonds in question could have carried a lesser rate than 5 per cent and sold at par, and that the excess interest for which petitioner is obligated over the 20-year period merely represents the return to the bond purchaser over this period of the premium of $125,400 paid by him. Under this theory it is contended that the interest at 5 per cent is in reality of two kinds, " effective interest " and " excess interest," and that interest of the latter class is in fact not interest at all, but merely the repayment of the capital investment of the bond purchaser represented by the premium he has paid and, consequently, the obligor under the bond only may deduct as interest paid in computing its net income that portion of the bond interest represented by the " effective interest."

Respondent's counsel cites several authorities on accounting practices to show that where bonds are sold at a premium it is merely indicated that the interest rate is higher than it need be for the bonds to be marketable at par, and that the sum of such premium is merely what the bond purchaser pays for such excess interest obligation, the amount of the premium being recovered by him over the term of the bond by a proportionate part of each interest payment made. It may be sound as a theoretical proposition to say

that whether a premium is received on the issuance of bonds rests upon the rate of interest which the bonds bear. It is obvious however that the rate of interest is not the only factor which determines the price at which bonds are sold. It is well known that as a matter of fact the security back of the bonds, the reputation and stability of the issuing company, and business conditions are factors equally as important. One corporation may issue 5 per cent bonds at a premium where another might have to issue similar bonds at a discount. The Government might sell its securities bearing 3½ per cent interest at a premium, while many corporations at the same rate of interest would have to sell bonds at a discount. Irrespective of the correctness of " effective interest " or " excess interest " as a theory of accounting, with respect to bond premiums, we can not assume that Congress by section 234 (a) (2) of the Revenue Act of 1926, in granting to a taxpayer the right, in computing net taxable income, of deducting, with certain designated exceptions, " all interest paid or accrued within the taxable year on its indebtedness * * *," had in mind such theory and used this term in the restricted sense denoted in accounting parlance as " effective interest " to the exclusion of a portion of the interest paid.

Interest on indebtedness has a definite and well accepted meaning as " the compensation allowed by law or fixed by the parties for use, or forbearance, or detention of money." *Kishi* v. *Humble Oil & Refining Co.*, 10 Fed. (2d) 356; *Ripple* v. *Mortgage & Acceptance Corporation*, 137 S. E. 156; 193 N. C. 422; *Baird* v. *Meyer et al.*, 215 N. W. 542; 55 N. D. 930. It is not contended that the interest contracted for by petitioner was more than the legal rate. It is interest specifically agreed to be paid upon the principal amount of the bonds and any of the agreed interest payments when due would assuredly be recoverable by the bondholder as interest, being contracted for as such and within the legal rate. We think it clear that the word " interest " as used by Congress in the cited provision of the taxing act is to be understood in its ordinary sense. *United States* v. *Isham*, 17 Wall. 496. See also *United States* v. *Guest*, 143 Fed. 456; *In re Scheidt*, 177 Fed. 599; *Chattanooga* v. *Hill*, 139 Fed. 600.

The question here presented is not unlike that passed upon by the court in *United States* v. *Woodward*, 256 U. S. 632, in which it was argued that estate taxes were not deductible from income under section 214 (a) (3) of the Revenue Act of 1918, allowing with certain exceptions the deduction of taxes in computing net income, for the reason that the charge designated " estate taxes " was in reality merely a reduction of the estate before it passed, and consequently not a tax upon the estate, and in which the court held that irrespec-

tive of the effect of the charge it was one levied as a tax and so designated and must be considered as within the purview of the section allowing taxes as a deduction and, not falling within one of the excepted classes, it must be held to represent a proper deduction.

For the foregoing reasons we hold that respondent may not increase petitioner's taxable income for the several years in question by reducing the deductions taken as representing the interest paid on these bonds by a proportionate amount of the premium received on their sale.

This brings us to consideration of the question as to whether the bond premium received in 1925 represents income taxable for that year or whether an aliquot part thereof should be allocated to or spread over each of the 20 years of the bond period.

We think that the premium was clearly income. It makes no material difference in this case that the taxpayer was on the accrual basis. If it is taxable income at all, it accrued when the facts gave rise to it, that is, when the bonds were issued and the obligation to pay the premium arose, and as far as the record shows this would not affect the year in which it should be reported as income if taxable at all. The taxpayer received the amount in cash with no obligation whatever under any circumstances to return it. It was free to use it as it saw fit. It was enriched to that extent. The amount was received in a business transaction from the use of capital or credit or both. The Revenue Act defines what is gross and what is net income. It provides that gross income includes: " Income derived from business * * * or the transaction of any business carried on for gain or profits or gain and profits and income derived from any source whatever." The issuance and sale of the bonds is a business transaction in the generally accepted sense. Even the borrowing of money is a business transaction. It is a transaction for the purpose of carrying on business. The money is used in the business and the premium on the sale of the bonds certainly is an enrichment of the taxpayer and is money derived from the use of capital which is used as security and the credit, reputation and business standing of the borrower. It clearly comes within the scope of " any source whatever."

The case of *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, in our opinion has no applicability to this case whatever. In that case, as pointed out by the Supreme Court in the *Sanford & Brooks* case, 282 U. S. 359, the taxpayer, which had losses in business borrowed money which was to be repaid in German marks and which was later repaid in depreciated currency, had neither made a profit on the transaction nor received any money or property which could have been made subject to tax. But in this case the taxpayer actually

received money and became richer thereby during the taxable year. The receipt of this money was on account of a business transaction, to wit, the issuing of bonds. The premium on the bonds was in no sense borrowed money but became the taxpayer's property. Even if the money received as premium was on account of the fact that the rate of interest on the bonds was higher to some extent than normal business conditions required in order to sell the bonds at par, this fact clearly should not prevent the Government from subjecting the premium to tax when it represented a gain or profit which was received. It can not fairly be said that the amount represented a payment into the capital of the taxpayer, as in the case of money contributed to a corporation, for which stock is issued. While, colloquially speaking, a person who loans money to a corporation and receives bonds therefor has invested his money in bonds, the fact is that it is a loan. The lender who pays a premium in effect pays to the borrower money for the privilege of becoming a creditor of that particular borrower with the right to receive interest as agreed on and with the security and certainty of repayment he deems satisfactory. He is not engaged in the business of the borrower and he has no interest in the enterprise other than the repayment of the loan and the interest payments. The capital and assets are merely security for the payment. He contributes nothing to the capital of the business. He merely makes a loan which is to be repaid. A stockholder, however, who pays in cash for stock issued to him contributes his money to the capital of the corporation. His money becomes a part of the capital, which is risked in the business. This is a sufficient distinction between stock issued at a premium and bonds issued at a premium, and we do not think it follows that, because stock issued at a premium is not taxable income, but capital contributed, a premium on bonds is likewise a contribution to capital and not income.

Holding as we do that the premium received is income, should it be spread over the life of the bonds?

The petitioner relies on section 212 (b) of the Revenue Act of 1926, which is as follows:

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 200 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

174

The petitioner had adopted a system of accounting with respect to bond premiums as prescribed by the Department of Public Utilities of Massachusetts, entitled "A Uniform System of Accounts for Gas and Electric Companies," pursuant to which it deferred the inclusion in income of said premiums until the maturity of the bonds. This is not in accordance with the method of accounting which in the opinion of the Commissioner clearly reflects income. The Commissioner, in the case of bond premiums, has provided in regulations—article 544, Regulations 45, covering the 1918 Act, and article 545 of Regulations 62, 65, and 69, covering the Revenue Acts of 1921, 1924, and 1926, respectively, that "if bonds are issued by a corporation at a premium, the net amount of such premium is gain or income which should be prorated or amortized over the life of the bonds."

These regulations set out the method of accounting which in the opinion of the Commissioner clearly reflects the income with respect to bond premiums, and section 212 provides that if in the opinion of the Commissioner the system of accounting employed does not clearly reflect the income, then "the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." See also sec. 213 (a) of the Revenue Act of 1926.

These regulations have been in force and effect under all of the revenue acts since the Revenue Act of 1918. In all subsequent legislation Congress has not seen fit to change this rule. Regulations which have been in force and effect for such a long period of years, especially when subsequent legislation has been enacted in the Revenue Acts of 1921, 1924, 1926, and 1928, should be given great force and effect and should not be upset in the absence of a clear showing that they are contrary to the statute. Instead of being contrary to the statute, it seems to us that the regulations come squarely within the above quoted section of the statute and that the Commissioner has set forth therein his opinion of the system of accounting which clearly reflects the income.

In view of the foregoing, it is our opinion that the bond premiums should be amortized over the life of the bonds and a pro rata portion thereof included in the taxable income during the taxable years involved.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK, dissenting: I dissent, since I think the premium was income to be reported in 1925.

TRUSSELL, dissenting: I agree with the conclusion reached in the foregoing opinion that deductions taken by the petitioner in the taxable years and representing interest paid or accrued in such years upon its outstanding bonds may not be adjusted by deduction of an aliquot part of a premium received on sale of the bonds. I do not agree, however, with the conclusion that the bond premium in question represented income within the purview of the Sixteenth Amendment to the Constitution.

The definition of "income" under the amendment as given by the court in *Eisner v. Macomber*, 252 U. S. 189, as " * * * the gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets * * * " calls for a careful consideration of all the facts to determine just what the premium here in question represents in order that we may, in the language of that court " * * * apply the distinction as cases arise, according to truth and substance without regard to form."

The premium in question is certainly not a gain realized in the sale of capital assets. The issuance and sale of bonds is merely an operation of borrowing capital—of securing investment of funds in the enterprise. Neither can the premium be said, in my opinion, to be a gain realized through the use of capital or labor, or both combined, as it is part of a fund obtained through a purely financing transaction, not carried out as an incident of the operation of the business in its use of capital or labor in producing income, but to provide the fund for such operation—to secure and assemble for use the capital necessary to be used, together with labor, in the operations from which the gain anticipated is to flow.

Does such an item represent capital or income? The court said in the case last cited, "The fundamental relation of 'capital' to 'income' has been much discussed by economists, the former being likened to the tree or the land, the latter to the fruit or the crop; the former depicted as a reservoir supplied from springs, the latter as the outlet stream to be measured by its flow during a period of time." As a prelude of the production of income a corporation must provide the capital to be employed in its production. This it does by securing investments of funds in the enterprise by the issue of stocks and bonds. The difference in character of the investments is to suit the needs of the several classes of investors, to draw from the entire field of those having money to invest—the investor who is willing to speculate and take a risk of loss or deferred gain, in return for the opportunity presented of ultimate probability of generous profits, and to whom an investment in common stock appeals; the investor desiring a generous yield of income, but willing to

have this limited, in return for priority given his investment as to earnings and capital, and consequently favors a preferred stock; and the investor who is willing to take a small return of income, but desires this fixed, and his investment to obtain for a limited period and to be secured by a mortgage on corporate property, and to whom, in consequence, a bond investment is more desirable. All three of these classes, although their investments differ in character are, nevertheless, investors in the enterprise. The amounts which they pay into the corporation for stock or bonds represent their investments therein, whether these amounts are less or more than the par value of the securities received. In so far as the question presented is concerned, I can see, as to the investor, no difference in the character of the payments, up to the face value of the stock or bonds as distinguished from an amount in excess of that value, and I can see no real distinction, in so far as their representing contributions to capital of the corporation by the purchasers, between a purchase of stock and a purchase of bonds.

May we hold, then, as to a bond purchase that an amount which the investor pays in excess of the face value of the bond, and representing his investment in the corporation, is, to the latter, not capital but income? Using the same comparison employed by the court in *Eisner* v. *Macomber, supra,* I can see by reason of amounts received by a corporation from the investors in its bonds, even though these amounts be in excess of the face of the bonds, nothing more than an increase in the capital "reservoir," a feeding of the latter by the "springs" of investment.

We have consistently held that a corporation which repurchases its bonds at a figure less than the amount at which they were issued, and retires them, has realized no income thereby. *New Orleans, Texas & Mexico Railway Co.*, 6 B. T. A. 436; *Independent Brewing Co.*, 4 B. T. A. 870. In *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, it was held that a corporation which satisfied a loan obligation at less cost to it than the amount borrowed, although money in pocket to the extent of the difference, had not realized income within the purview of the Sixteenth Amendment as the transaction did not result in " * * * gain from capital and labor, or from either of them, or in profit gained through the sale or conversion of capital * * *." Applying the same definition of income to the transaction here detailed, I can not see that the premium received by this petitioner falls within its scope.

---

SEAWELL, dissenting: Reduced to its final analysis, this is what occurred in reality in petitioner's bond transaction:

It offered for sale its 20-year 5 per cent bonds in the amount of $2,000,000, to the purchaser who would take them at the greatest

amount of reduction of interest charge. The bonds were sold to a purchaser who agreed to reduce the interest for the 20 years by a present payment of $125,400, so that each year's interest of $100,000 was reduced by the sum of $6,270 paid by the purchaser in advance.

The petitioner sold no capital asset, and it received no gain from capital or labor, or from both combined. *Eisner* v. *Macomber*, 252 U. S. 189. It received a rebate or reduction of the price to be paid for the hire of money, but this, I am persuaded, is no more taxable under the Sixteenth Amendment and Acts of Congress than the reduction of any other expense of business or the " diminution of a loss." *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170.